487 So.2d 721 (1986)
Alan GAGNET and Grace Gagnet, et al.
v.
Carlo J. ZUMMO and Carlo J. Zummo, II and State Farm Automobile Insurance Co.
No. 85-CA-613.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
*722 Harry V. Singreen and Shirley A.B. Singreen, New Orleans, for plaintiffs-appellants.
Sidney J. Angelle, Metairie, for defendants-appellees.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
WICKER, Judge.
This appeal by plaintiffs arises from a jury award of five thousand dollars ($5,000.00) in favor of Grace and Alan Gagnet, their minor child, Corinne, and their unborn child against defendants, Carlo Zummo II and his insurer, State Farm Mutual Automobile Insurance Company, for damages suffered in an automobile accident. We amend to increase the award.
The facts show that on October 25, 1982 Mrs. Grace Gagnet, who was two months pregnant, was driving a 1982 Volkswagon on Interstate 10. She had just picked up her brother, Michael Drennan, and was going toward New Orleans when the traffic was stopped by the police. Her 18 month old daughter, Corrine Gagnet, was also a passenger. The Gagnet vehicle and the following vehicle came to a complete stop. Shortly thereafter, defendant, Carlo Zummo's vehicle rear-ended a station wagon driven by Carol Rabalais which was directly behind Mrs. Gagnet. The Rabalais vehicle in turn struck the Gagnet car with some force. Following the accident, the occupants of plaintiffs' car, appearing unhurt, declined an offer to go to the hospital.
Damage to plaintiff's automobile was estimated at three thousand forty-two dollars and fifty-three cents ($3,042.53) and was paid by plaintiffs' insurer, Aetna Casualty & Surety Company.
On January 7, 1983, the Gagnet family brought this lawsuit against Carlo Zummo and his insurer, State Farm, to recover personal injury damages as well as property damages incurred over and above the amount previously paid by their insurer.
The case was tried to a jury on December 12, 13 and 17, 1984. At that time, the parties stipulated that in the event of a judgment in plaintiffs' favor, defendant, State Farm, would receive a credit of $3,042.52 for the automobile repairs previously paid to plaintiffs by their insurer, *723 Aetna Casualty and Surety Company. After deliberation, the jury returned a verdict in plaintiffs' favor and awarded damages in the amount of five thousand dollars ($5,000.00) subject to the stipulated collision insurance subrogation deduction of $3,042.50, leaving plaintiffs the net amount of $1,957.50.
Plaintiffs thereafter perfected an appeal of the judgment alleging that the jury's net verdict of $1,957.47 was an abuse of discretion and mandates an increase.[1]
Appellant argues that out of this amount they cannot recover their $200.00 collision deductible or their $1,919.08 rental car bill, much less allowing recovery for $450.00 in medical expenses, $316.00 in additional substitute transportation expenses, pain and suffering, mental anguish, inconvenience, loss of consortium and other expenses caused by this accident.
In determining whether an award of damages is inadequate or excessive we must first inquire whether the jury's award for particular injuries and their effect upon the injured person was a clear abuse of the trier of fact's "much discretion." On appellate review it is only after an articulated analysis of the facts discloses an abuse of discretion that an award may for stated reasons be considered either excessive or insufficient. Only after making a determination of abuse can an appellate court disturb the award and then only to the extent of lowering it or raising it to the highest (or lowest) point which is reasonably within the discretion afforded that judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Bourgeois v. Bill Watson's Investments, Inc., 458 So.2d 167 (La.App. 5th Cir.1984).
All of the parties testified that the impact of the collision was severe. The evidence reflects that all of the occupants in plaintiffs' vehicle were wearing safety restraints, but the force of the collision was so severe that it flattened Mr. Drennan's seat, collapsed the baby seat and caused the front grill of the car to fall off of the car.
Mr. Drennan testified that after the accident Mrs. Gagnet was upset and complained of neck aches and headaches. On October 28, 1982, Mrs. Gagnet was examined by her family physician, Dr. Sandra Mahkorn. Dr. Mahkorn testified that Mrs. Gagnet complained of pain, stiffness in the neck, pain in the lower back and pain over the left trapezius (muscle going from the neck to the shoulder). She had a decreased range of motion, secondary to pain and moderate paracervical tenderness as well as tenderness in the lumbar area. Dr. Mahkorn diagnosed that plaintiff suffered muscle strain and testified that it is common for this type of injury to manifest itself several days after an accident and that occasionally the pain grows worse over a period of time. Because of plaintiff's pregnancy, she was not given medications nor were x-rays taken but was advised to use warm compresses every two hours and a neck support when lying down.
Dr. Mahkorn was also treating plaintiff for her pregnancy and saw her again on November 4, 1982. At that time Mrs. Gagnet complained of lower right abdominal pain. The area of tenderness was located above the groin near the uterus and one of the ovaries. She was seen again in January, 1983, and six times thereafter before delivery. The doctor testified that Mrs. Gagnet's neck pain was resolved after the October 28, 1982 visit and noted that during *724 the early stages of pregnancy, the patient does not usually suffer back pain. Low back pain, she testified, is not uncommon as the child grows, but an injury to the back can cause back problems to be aggravated with the growth of the fetus.
Mrs. Gagnet and her husband testified that she suffered neck and back pain after the accident. She stated groin pain began later that evening and continued to bother her at night for six weeks. She recalled that her neck pain resolved fairly quickly, but that the back pain, located in the upper right part of her back, grew worse as she gained weight. Since Dr. Mahkorn told her that nothing could be done for her medically while she was pregnant, she sought no other medical advice. Mrs. Gagnet then said the groin pain finally disappeared in December.
Because of her upper back pain, plaintiff avowed that she was unable to handle her household duties and was forced to hire part time help. She further contended that she was unable to carry Corinne because of her back difficulties.
On cross-examination, Mrs. Gagnet claimed that she complained about her back to the doctor during every visit, although Dr. Mahkorn did not recall that complaint.
Mr. and Mrs. Gagnet both testified Mrs. Gagnet was fearful during the pregnancy for the health of the unborn child since medical examinations and ultrasound tests could not be totally relied upon to exclude injury to the fetus. Three ultrasonic readings were taken on October 29, 1982, January 21, 1983 and April 19, 1983. While there were no positive findings, Dr. Mahkorn testified that ultrasound does not adequately demonstrate all fetal abnormalities.
Mr. and Mrs. Gagnet also testified that prior to the accident Mrs. Gagnet was feeling well; she was an athletic, healthy woman active in teaching swimming lessons, and did not suffer during her first pregnancy any of the pain or personality changes she endured during the second pregnancy after the accident.
Mr. Gagnet also testified that he observed a transformation in his wife's personality from a loving, caring, calm natured wife and mother to one obsessed by her worry over the unborn child. He stated that his wife's fear and mental anguish were so great that during delivery she was afraid to "let the baby out." Thus, her labor which should have been accomplished in several hours, lasted from a Saturday until midnight of the following Tuesday. Following the birth, two separate examinations of their baby, Louis Gagnet, were made before it was determined that he was normal.
After reviewing the evidence, it is our opinion that Mrs. Gagnet suffered an injury to her neck which lasted a few days. The testimony indicates she further had an abdominal injury of several weeks' duration and a back injury which should have resolved itself in a short time but which did not because of her pregnancy. Further, it is clear that for seven months she suffered such severe anxiety regarding the health of her unborn fetus that it caused her to have a personality change. We do not find her fear unreasonable under the circumstances, nor do we find valid appellee's contention that her complaints were due solely to her pregnancy. After reviewing these facts we find the jury abused its discretion in awarding a total of only $5,000.00 to the plaintiffs. We further find that an award of ten thousand dollars ($10,000.00) is the lowest amount which would reasonably compensate Mrs. Gagnet for her mental distress, pain and suffering under the particular facts and circumstances of this case.[2]
*725 Claims are also made on behalf of Mr. Gagnet individually and Mr. and Mrs. Gagnet for their minor child, Corinne.
The evidence is clear that Corinne was buckled in a baby car seat at the time of the collision. Although the force of the impact caused the seat to collapse, Corinne was physically unhurt. She was emotionally upset for approximately two hours and we find $150.00 sufficient compensation due her for her mental distress.
Mr. Gagnet asserts that due to the injuries of his wife, he suffered a loss of consortium and mental distress regarding possible injury to the unborn child. There is insufficient evidence in the record to support this claim and accordingly, this court has not included any sum therefor in its judgment.
Aetna's estimator, Mr. Val Pitre, testified that plaintiffs were paid $3,042.53 by their collision insurer, Aetna Insurance Company, for repairs excluding a $200.00 deductible which the Gagnets paid. At trial Pitre contended that based on the information he had at time of his estimate, the car should have been repaired in twelve days. This time estimate is not seriously contested. The record reveals however that the car repair shop initially kept the car for three months. Because of that fact, the Gagnets rented a car for a period of almost two months at a cost of $1,919.08. Following the return of the vehicle to the repair shop, the problems were not totally resolved and the Gagnets incurred additional expenses in the amount of $560.00 before ultimately selling it.
Mr. Pitre testified that he prepared the estimate on October 28, 1982 and that at the time of the accident the car, a 1981 Volkswagen Rabbit, had a NADA book value of $6,500.00. He testified that his estimate was based on apparent damage but admitted that the vehicle could have sustained hidden damage of which he was unaware.
Appellee argues that since State Farm did not choose the estimator or repair shop, they should not be held accountable for repairs over Pitre's estimate. It further argues that the rental should be restricted to the 12 days the estimator stated it should have taken to fix the vehicle for a total of $420.00. Appellee does concede that appellants are entitled to recover the $50.00 loss of the baby car seat.
When property damage is sustained, the primary object is to restore the plaintiff, as nearly as possible, to the state he was in immediately prior to accident. Petrol Industries, Inc. v. Gearhart-Owen Industries, Inc., 424 So.2d 1059 (La.App.2d Cir.1982); Decuir v. Sam Broussard, Inc., 459 So.2d 1375 (La.App. 3d Cir.1984); Carter v. Gulf States Utilities Co., 454 So.2d 817 (La.App. 1st Cir.1984). When the thing damaged can be adequately repaired, the proper measure of damages is the cost of restoration. Price v. State, 451 So.2d 644 (La.App.3d Cir.1984). However a plaintiff also has a duty to mitigate the damages incurred by having repairs made promptly. Voitier v. Farrelly, 320 So.2d 581 (La. 4th Cir.1975).
The jurisprudence provides that an owner of an automobile damaged by a tortfeasor may rent another car while his car is being repaired. However, the owner is required to have the repairs made promptly. Voitier v. Farrelly, supra; Carimi v. Saia, 301 So.2d 895 (La. 4th Cir.1974); Nolan v. Liuzza, 301 So.2d 892 (La. 4th Cir. 1974); Blum v. Allstate Insurance Co., 351 So.2d 283 (La.App.3d Cir.1977), writ denied 353 So.2d 1036 (La.1977); Russell v. Lloyds Towing Service, Inc., 381 So.2d 896 (La.App.2d Cir.1980). Where the owner is not diligent in having the vehicle repaired promptly, his recovery is reduced to a reasonable time in which the vehicle should *726 have been repaired. Carimi, Blum, supra.[3]
In this case the uncontradicted testimony of Val Pitre, who was accepted by both parties as an expert automobile appraiser, was that the total cost of repairs to the Gagnet automobile was $3,242.19 and that a reasonable period of time to repair the vehicle was twelve days.
Pitre testified that a body shop required specialized training and equipment to repair such an automobile because the Gagnet car had a unitized body. Pitre also testified that Phillip Bonura of that body shop accepted the repair estimate prepared by Pitre including the twelve day period of repair. Even though Bonura Auto Service, Inc. took over three months to repair plaintiffs' auto, the car still demonstrated numerous problems.
Plaintiffs did not call anyone from Bonura's Auto Service, Inc. to explain the delay in excess of twelve days, nor was any expert witness called by plaintiffs.
Plaintiffs selected Bonura's Auto Service, Inc. to make the repairs. There is no evidence in the record regarding the quality of the personnel and/or equipment of that concern. The record is barren of even a perfunctory investigation by plaintiffs of the auto repair shop before entrusting it with the vehicle. Neither does the testimony reflect prudent efforts by plaintiffs to take alternative measures when the body shop delayed repairing the automobile.
Under these circumstances we felt that recovery by plaintiffs for a rental auto should be limited to twelve days and cab fare should be denied. However, since plaintiffs have proved by a preponderance of the evidence that the excess damages over the estimated amount for the repairs was caused by the accident, we find plaintiffs should recover that sum as well as the deductible they paid under their insurance contract.
Finally, appellants raise an issue involving the suspension of judicial interest. At the conclusion of trial, defendants-appellees deposited their approximation of the net verdict in the registry of the district court in order to stop the accrual of judicial interest. Appellants urge that this effort to suspend the accrual of interest violates the intent and purposes of the statutes providing for judicial interest. LSA-C.C. Art. 2924; LSA-R.S. 13:4203.
Appellees, on the other hand, argue that the deposit is a valid mechanism to suspend judicial interest, citing LaGraize v. Bickman, 391 So.2d 1185 (La.App. 4th Cir. 1980), which is the sole jurisprudential authority for using depository procedures for this purpose.
In the LaGraize case, the court held that any defendant, once cast in judgment, may deposit the full amount of the judgment into the registry of the court together with the accrued costs and interests, and thereby be relieved of added costs and interest in the event of appeal by plaintiff. However, in order to take advantage of this procedure, the court stated that the following conditions must be met:
"There first must be a tender to and refusal to accept by the judgment creditor. The tender and/or the deposit must be for the full amount of the judgment, including costs and interest. It must be unconditional and constitute a complete waiver of any future defense as to liability on the part of the judgment debtor. Acceptance of the tender and/or withdrawal of the funds by the judgment creditor(s) is without prejudice to any of its (their) rights to appeal as to quantum." At pages 1190-1191.
*727 In addition, the court held that in the event of an increase in quantum on appeal, defendant is liable for all additional costs and judicial interest on the amount of the increase from date of judicial demand until paid. In resolving the issue in this manner, it was noted that the plaintiff receives the benefit of the judgment award, of use of the money during the appeal process and defendant is relieved of certain additional costs, and that neither party is harmed.
After considering the benefits and disadvantages to the parties, the equitable conclusion is that the defendants be allowed to relieve themselves of the added interest and costs by depositing the amount of the judgment, plus interest and accrued costs in the registry of the court so long as the conditions delineated by the Fourth Circuit are met. As we find the conditions were met in this case, we hold that defendants are liable for judicial interest only on the amount of the increase granted by this court from date of judicial demand and all costs.
Accordingly, after a review of the law and evidence, the trial court judgment is hereby amended to increase the award to plaintiffs as follows:
$560.00 for repairs over the estimate; $200.00 for the deductible paid by plaintiffs; $420.00 for car rental (12 days); $150.00 for Corinne's mental distress; $50.00 for the broken baby car seat; $10,000.00 to Mrs. Gagnet for pain, suffering and mental distress; and finally $3,042.52 for damages to the car subject to a credit in defendant's favor from the total award of $11,380.00 as stipulated by the parties.
The judgment is affirmed in all other respects. Appellee is to pay costs of this appeal and judicial interest on the increase from date of judicial demand.
AFFIRMED IN PART
AMENDED IN PART
RENDERED AS AMENDED.
KLIEBERT, J., concurs in part and dissents in part with written reasons.
KLIEBERT, Judge, concurring in part and dissenting in part.
I concur in the majority view that the award by the jury was inadequate, but believe the judgment should have been set aside and the case remanded because the jury was improperly constituted.
State Farm Mutual Automobile Insurance Company was a defendant in the suit. As finally constituted, five of the twelve members of the jury were insured by State Farm and hence were members of its mutual fund. Although timely challenged by the plaintiffs' attorney, the trial judge refused to excuse the State Farm policyholders for cause where in answer to the court's questions they said being policy holders would not influence them in rendering a fair verdict. During the questioning of the prospective jurors, however, the record shows: One said the trial would cost him money, whether State Farm had to pay or not (Tr. 1, pp. 41-42); One wondered whether State Farm would hold her opinion as a juror against her as a policyholder (Tr. 1, pp. 47-48); A third policyholder, when first asked, said she could not render a large verdict against State Farm. Thus, at least some of the prospective jurors expressed concern over the effects their action as a juror would have on them as a policyholder. The refusal to excuse such jurors for cause resulted in the plaintiffs' counsel having to use his peremptory challenges.
Code of Civil Procedure Article 1765 provides in part as follows:
"A juror may be challenged for cause based upon the following:
. . . . .
(2) When the juror has formed an opinion in the case or is not otherwise impartial the cause of his bias being immaterial...." (Emphasis Supplied)
In a factual situation similar to the one involved here, our brethren on the Fourth Circuit, in Andry v. Cumis Insurance Society, Inc., 387 So.2d 1374 (4th Cir.1980) at page 1377, said:

*728 "The jurors belief that their own rates would rise if plaintiff were successful, indicates to this court that the jurors believed they possessed an indirect pecuniary interest in the outcome of the case, which would render them per se incapable of the impartiality required of a juror, as they believed themselves to be the indirect financial beneficiaries of a verdict against the plaintiff. While this viewpoint might not be prejudicial on the question of liability, it would clearly have a prejudicial effect on an award of damages. This inquiry at issue is of such a highly prejudicial nature that its effect would be to taint the entire rest of the proceedings. It is a credit to the strength of plaintiff's case that the jury rendered an award of $25,000.00 in their favor. We hold that the trial judge's refusal of a challenge for cause, made against jurors who believe that if plaintiffs were adequately compensated or otherwise successful in their action, the jurors insurance rates and/or premiums would rise, is clearly reversible error."
In the same opinion, Judge Boutall, now a member of this Court, in his concurrence, at page 1378, said:
"The record merely reflects that the questioned jurors believed that their insurance rates would increase if plaintiffs were awarded damages. That alone is insufficient to constitute the basis of a challenge of cause, it being necessary to show that this fact would cause him to be biased or not impartial."
This court denied a writ application on a trial judge's ruling holding that jurors who were policyholders of State Farm Fire and Casualty Insurance Company or of State Farm Mutual Insurance Company were subject to a challenge for cause without the necessity of showing actual bias. On a writ of review of the same ruling, in Roques v. State Farm Insurance Company, 469 So.2d 254 (La.1985), the Supreme Court said:
"The ruling of the trial court is reversed. There was no showing of grounds for challenge for cause under Article 1765. The case is remanded for further proceedings."
Chief Justice Dixon dissented, being of the opinion the rulings of the trial judge and this court were correct because "all jurors insured by the defendants are subject to challenge for cause." Justice Lemmon concurred, stating: "Nothing in this ruling prevents further voir dire to develop a basis for bias or other grounds for challenges for cause."
We note that only State Farm Fire and Casualty Insurance Company was a defendant in the suit and it is not a mutual insurance company. Rather, it is a stock company, wholly owned by State Farm Mutual Automobile Insurance Company. Thus, the ruling in the Roques case was limited to a situation where the policyholder of a stock company was the party defendant. In my view, the Roques case is distinguished from the instant case on the facts. In Roques, the issue was whether a policyholder of a stock company owned by a mutual company was per se subject to a challenge for cause. Here the issue has two facets, one legal and one factual: (1) Is a policyholder, who by virtue of his acquisition of the policy is a member of a mutual fund, per se subject to challenge for cause, and (2) even if the answer to (1) is in the negative, were the particular jurors questioned here shown to be biased by virtue of their relationship to the defendant?
Although he cannot be assessed an additional premium for losses (by virtue of a provision of the insurance code), a member of a mutual fund has something to gain where the mutual funds loss experience is less than initially anticipated in setting the premium in that the smaller the sums paid out in claims, the larger the dividends distributed to mutual fund members will be. Thus, those jurors who were policyholders of State Farm Mutual Automobile Insurance Company had a direct pecuniary interest in the outcome of the litigation. Admittedly, the financial gain to the individual mutual fund member on a case by case basis is not substantial. Nevertheless, it is a direct interest which given the ongoing *729 public advertising of the correlation between claims and premiums, its effect can be dramatized by counsel's arguments. Therefore, in my view, the trial judge's refusal to excuse State Farm Mutual Automobile Insurance Company's policyholder, per se, for cause was reversible error. Although judicial economy may dictate a setting of quantum by this Court, the fact remains that the party requesting the jury trial never received what he asked for, i.e., trial by a competent jury. For the reasons stated, I would set aside the jury verdict and remand for a jury trial.
NOTES
[1] The Louisiana Constitution of 1974, art. 5 sec. 10(B) mandates the appellate court to review both fact and law. Although appellant presented several other specifications of error, including an allegation that the jury was improperly constituted, we find no need to address those issues in view of our finding of manifest error. We further note that when the appellate court determines that an error of fact or law requires an adjustment of the verdict, it is the duty of the appellate court to decide the case on the record. L.S.A. C.C.P. 2164; Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980). Remand for a new trial is mandated only when the evidence is so nearly equal that a first hand review of the witnesses is essential to a fair resolution of the issues. Ragas, supra, Ketcher v. Illinois Central Gulf R. Co., 440 So.2d 805, writ denied 444 So.2d 1220 and 444 So.2d 1222.
[2] We have reviewed similar cases from 1968 to the present and find the awards have varied considerably for the mental distress of a pregnant woman over the potential damage to the unborn fetus. See Anderson v. Safeco Insurance Co., 396 So.2d 322 (La.App. 2nd Cir.1981), ($7,000 for mental anguish for unborn child and crushed wrist); Jolivette v. Safeco Ins. Co., 379 So.2d 1213 (La.App. 3rd Cir.1980), ($1,250 to plaintiff a few weeks pregnant who suffered headaches and backaches after accident); Eymard v. McKinnon, 302 So.2d 56 (La.App. 4th Cir.1974), ($5,000 for distress associated with miscarriage); Buckelew v. Plunkett, 242 So.2d 372 (La.App. 2nd Cir.1970), ($500 for mental anguish to four month pregnant woman with no physical injury and where death of child was unrelated to accident); Wheeler v. Simonton, 215 So.2d 359 (La.App. 2nd Cir.1968), ($1,000 for pain, suffering and mental distress to 8½ month pregnant plaintiff who suffered contusions and bruises to head and abdomen).
[3] There is divergence between the Fourth and Third Circuits as to whether the repairman's delay in repairing the vehicle reduces plaintiff's recovery despite plaintiff's diligence. The Fourth Circuit holds that repairman's delay does not affect recovery if plaintiff proves he was diligent. Carimi, Nolan, Voitier, supra. The Third Circuit, on the other hand, holds that regardless of plaintiff's diligence, he cannot recover for rentals past the time in which the repairs could have been done normally and reasonably by a repairman using due diligence. Blum, supra.