CHEHARDY, Chief Judge.
BOS Bancshares, Inc., a Louisiana corporation (herein known as the Company), was organized on May 8, 1981 at the direction of the management of the Bank of the South (herein known as the Bank) to serve as a vehicle for the formation of a bank holding company, as defined in the Bank Holding Company Act of 1956, as amended, 12 U.S.C.A. § 1841 et seq. The purpose of the Company was to act solely as a holding company for the Bank, which would be a subsidiary of the Company, upon the Company’s acquisition of 100% of the outstanding Bank stock. The officers and board of directors of the Company and the Bank consisted of the same persons. On August 9, 1982, the Company’s application to form a bank holding company was approved.
On December 31, 1982 the Company consummated an exchange offer whereby designated Bank stockholders were offered the opportunity to exchange each share of their Bank stock for one share of Company stock and debt assumption of $46.62. In the event that any of the designated stockholder’s indebtedness on such stock was less than $46.62 per share, the Company’s 10% subordinated debentures in an amount equal to the difference between the amount of indebtedness per share assumed for such stockholder and the $46.62 per share assumed for the other stockholders would be issued. Other Bank stockholders were offered the opportunity to exchange each share of their Bank stock for one share of Company stock and $46.62 in principal amount of the Company’s 10% subordinated debentures. The holders of 42,351 shares (84.70%) of Bank stock participated in the exchange offer.
In a second attempt by the Company to acquire 100% of the outstanding Bank stock, a special meeting of the stockholders of the Bank was held on May 8, 1984. At that meeting a reorganization and merger agreement was adopted. Pursuant to the agreement (1) a wholly-owned subsidiary of BOS Bancshares, Inc., known as the New Bank of the South, would be merged into the Bank, after which the Bank would be a wholly-owned subsidiary of the Company, and (2) each outstanding share of the Bank’s common stock, $5 par value, held by stockholders other than the Company would be exchanged for $35 in cash. The proxy statement made the rights provided to dissenting shareholders by LSA-R.S. 6:376 of the Louisiana Banking Law available to any shareholder who did not accept the offer.
On July 12, 1984, after complying with the statutory requirements of R.S. 6:376, plaintiffs filed demand for the fair cash value of their stock as of May 7, 1984 in the sum of $99.26 per share and placed their stock certificates in escrow with bank *229 ing institutions located in the Parish of Jefferson.
The Bank delivered to plaintiffs their rejection of the demand for $99.26 per share and again offered the sum of $35 per share.
Pursuant to a court order and R.S. 6:376, defendants then deposited $198,675, representing $35 per share for the total of 5,675 shares held by plaintiffs in the registry of the court on August 22, 1984. The trial judge rendered judgment in favor of plaintiffs, valuing their stock at $41 per share with legal interest running from the date of judicial demand.
The Bank of the South and the New Bank of the South appealed, arguing that a dissenting shareholder is not entitled to legal interest from the date of judicial demand on funds deposited in the registry of the court pursuant to R.S. 6:376.
Plaintiffs answered the appeal contending the trial court erred in the following respects:
“(A) The Trial Court erred in its interpretation of La.R.S. 6:376 as to the meaning of ‘fair cash value’.
“(B) The Trial Court erred in not requiring the defendants/appellants to pay unto the minority share holders the same price per share as was paid by and between the dominant and controlling officers and directors of the bank.
“(C) The Trial Court erred in not requiring the defendants/appellants, as fiduciaries, to prove good faith of the fiction of merger but also to show its eminent fairness to the minority share holders.
“(D) The Trial Court erred in discounting the value of $75.00 determined by expert witnesses of plaintiffs/appellees and defendants/appellants by 45% to arrive at $41.00 per share when a normal arms length merger would have required a payment of $75.00 per share to plaintiffs/appellees.”
The pertinent language of R.S. 6:376 provides as follows:
“E. (1) In case of disagreement as to such fair cash value * * * the dissatisfied stockholder * * may file suit against the bank or the merged or consolidated bank, as the case may be * * * praying the court to fix and decree the fair cash value of the dissatisfied stockholder’s shares as of the day before the action complained of was taken, and the court shall, on such evidence as may be adduced in relation thereto, determine summarily whether any payment is due and, if so, such cash value, and render judgment accordingly.
$ ⅝ # sfs ⅜ ‡
“G. If the bank or the merged or consolidated bank, as the case may be, shall, in its notice of disagreement, have offered to pay the dissatisfied stockholder on demand an amount in cash deemed by it to be fair cash value of his shares, and if, on the institution of a suit by the dissatisfied stockholder claiming an amount in excess of the amount offered, the bank or the merged or consolidated bank, as the case may be, shall deposit in the registry of the court, there to remain until the final determination of the cause, the amount so offered; then, if the amount finally awarded such stockholder, exclusive of interest and costs, be more than the amount offered and deposited as aforesaid, the costs of the proceeding shall be taxed against the bank or the merged or consolidated bank, as the case may be; otherwise, the costs of the proceeding shall be taxed against such stockholder.”
We will first address those issues raised in plaintiffs’ answer to the appeal.
Plaintiffs allege the trial court erred in failing to award them the same consideration paid by defendants to shareholders in other stock transactions. R.S. 6:376 dictates that dissenting shareholders receive the fair cash value of the stock on the day before the transaction occurred, which in this case is May 7, 1984. While the value paid to other shareholders in transactions prior to that date may aid in ascertaining the fair cash value as of May 7, 1984, it is not conclusive of that issue.
The language of R.S. 6:367 requires that the trial court “fix and decree the fair cash *230 value of the dissatisfied stockholders shares.” The trial judge, in his reasons for judgment, defined fair cash value as “the price at which a willing purchaser and a willing seller would buy and sell shares of stock.” Plaintiffs suggest that the merger was not an arm’s length transaction and, therefore, this definition is inappropriate.
R.S. 6:376 was created by Act 719 of 1984, which describes its purpose as being relative to financial institutions and the regulation thereof. Act 719 provides, among other things, the organization and operation of state banks, prohibited practices relative to the business of banking, the licensing of limited function financial institutions, bank structure, and international banking activities in Louisiana, all of which regulate the banking industry.
The statute does not define the phrase in question. The Louisiana Supreme Court has, however, equated the term to fair market value in the areas of corporations, Wainwright v. Lingle, 236 La. 854, 109 So.2d 444 (1959), and bankruptcy, Harman v. DeFatta, 182 La. 463, 162 So. 44 (1935).
While viewing the statute as a whole, we must give the statutory language its most usual signification. Terms of art or technical terms and phrases are to be interpreted according to their received meaning and acceptation with the learned in the art, trade or profession to which they refer. LSA-R.S. 1:3; LSA-C.C. arts. 14 and 15.
The language and purpose of the statute reveal the legislative intent that the phrase “fair cash value” be interpreted to mean fair market value or fair cash price for which the stock can be sold on the open market. Further, the jurisprudence interpreting the phrase in other similar contexts supports this conclusion. Therefore, we find that the trial court’s interpretation of the term is accurate.
In determining whether the trial court’s assessment of the fair cash value of the Bank stock is inadequate, as alleged by plaintiffs’, we must give great weight to the factual conclusions of the trial judge and not disturb this factual finding in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koekring Company, 283 So.2d 716 (La.1978).
The matter was heard on May 29, 1986. At trial, both sides offered expert testimony on the issue of the fair cash value of plaintiffs’ shares as of May 7, 1984. D.H.B. Chaffe, on behalf of defendants, assigned a value of $29.11 per share of Bank stock. He further testified that in the best situation the upper value of the stock would be $35 to $37 per share. Because of the small size and market territory of the Bank and because its shares were timely traded, Chaffe discounted the value of the stock by 10% for size and 35% for lack of marketability to arrive at the fair cash value of plaintiffs’ stock. Robert Ramirez, plaintiffs’ expert, valued the stock at $75 per share.
Considering the experience of each expert, the testimony offered and the other evidence presented we find no manifest error in the trial court’s valuation of the Bank stock at $41 per share.
Finally, plaintiffs contend, “The trial court erred in not requiring defendants/appellants, as fiduciaries, to prove good faith of the fiction of the merger but also to show its eminent fairness to the minority shareholders.” They rely on the Louisiana Supreme Court case of Levy v. Billeaud, 443 So.2d 539, 543 (La.1983), for the proposition that they adequately alleged the unfairness of the transaction, thereby placing the burden on defendants of proving their good faith. The pertinent language of that case states as follows:
“[A] fiduciary’s dealings with the corporation are subjected to rigorous scrutiny and where any of his contracts or engagements with the corporation is challenged the burden is on the fiduciary not only to prove good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. Noe v. Roussel [310 So.2d 806], supra at 818. See Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281, 289 (1939); Geddes v. Anaconda Copper Min. Co., 254 U.S. 590, 599, 41 S.Ct. 209, *231 212, 65 L.Ed. 425, 432; Matter of Mobile Steel Co., 563 F.2d 692, 701 (C.A. 5th Cir.1977); Marshall v. Snyder, 572 F.2d 894, 900 (C.A.2d 1978).”
Therefore, we must decide whether the issue of a breach of a fiduciary duty was before the trial court.
Plaintiffs’ petition, while it alleges broad facts concerning a breach of a fiduciary duty, does not clearly raise the issue, and prays solely for relief pursuant to R.S. 6:376. Additionally, plaintiffs’ pretrial memorandum stated that “[t]he sole and contested issue of fact and law is the amount of the fair cash value of the shares of the Bank of the South as of May 7, 1984.” Defendants’ pretrial memorandum states that “[t]he sole issue of fact and law in this matter is the designation of the fair cash value of the shares of the Bank of the South as of July 11, 1984.” The parties, therefore, agreed at the pretrial stage that the only issue before the trial court was the fair cash value of the Bank share. It has consistently been recognized that pretrial proceedings serve to limit the issues before the trial court and control the subsequent cause of action, unless modified at trial to prevent manifest injustice. LSA-C. C.P. art. 1551; Daspit Bros. Marine Divers, Inc. v. Lionel J. Favret Const. Co., 436 So.2d 1223 (La.App. 5 Cir.1983).
At trial, counsel for plaintiffs argued the relevancy of testimony concerning fairness as it applied to R.S. 6:376. The judge consistently limited the admission of such as relevant to the narrow issue before the court and indicated that he did not want to expand that issue. Counsel did not pursue questioning in that area or argue that the testimony was relevant to any other issue before the court.
It is apparent from the transcript that the parties and the judge intended to try only the narrow issue of fair cash value pursuant to R.S. 6:376. The very limited testimony admitted on the alleged unfairness of the merger was ancillary to the issue of fair cash value and was not sufficient to raise that issue at trial.
For these reasons, we find that this issue was not before the trial court and decline to address it on appeal. Navarro v. Bommarito, 367 So.2d 74 (La.App. 4 Cir.1979), writ denied 369 So.2d 458.
With respect to the funds on deposit, defendants urge that plaintiffs are entitled to interest from the date of judicial demand only on the amount awarded by the court in excess of the amount deposited in the registry of the court.
In response, plaintiffs contend legal interest was properly awarded because, upon filing demand for the fair cash value of their shares, their stock certificates were cancelled, they did not receive dividends, and they were not allowed to withdraw the funds from the registry of the court.
Little jurisprudence exists in this area, none of which resolves this issue. The most recent standard set forth by this court was articulated in Gagnet v. Zummo, 487 So.2d 721 (La.App. 5 Cir.1986), which held that, once cast in judgment, any defendant may deposit the full amount of the judgment into the registry of the court together with the accrued costs and interests, and thereby be relieved of added costs and interest in the event of appeal by plaintiff, under the following conditions: (1) there is a tender to and refusal to accept by the judgment creditor; (2) the tender and/or the deposit is for the full amount of the judgment, including costs and interest; (3) the tender is unconditional and constitutes a complete waiver of any future defense as to liability on the part of the judgment debtor; and (4) acceptance of the tender and/or withdrawal of the funds by the judgment creditor(s) is without prejudice to any of its (their) rights to appeal as to quantum.
Gagnet, supra, differs factually from the case before us. R.S. 6:376 required defendants to deposit the funds in the registry of the court early in this litigation. The statute further requires that the sum remain in the registry of the court “until the final determination of the cause.” R.S. 6:376. Therefore, the deposit is out of the hands of either party until the judgment is final.
Considering this statutory language, the positions of the parties, and the fact that *232 the award is greater than the deposit, we conclude the trial judge was correct in requiring defendants to pay legal interest from the date of judicial demand on the full sum of $41 per share.
For the above reasons, the judgment of the district court is affirmed. Costs are assessed against appellants.
AFFIRMED.