527 So.2d 989 (1988)
Victoria MILLER, Plaintiff-Appellant,
v.
WINN-DIXIE STORES, INC., Defendant-Appellee.
No. 87-312.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
Tate & Tate, Paul C. Tate, Jr., Mamou, for plaintiff-appellant.
Brinkhaus, Dauzat & Caviness, Jerry J. Falgoust, Opelousas, for defendant-appellee.
*990 Before DOMENGEAUX and GUIDRY, JJ., and REGGIE,[*] J. Pro Tem.
DOMENGEAUX, Judge.
Victoria Miller commenced these proceedings to recover damages for the injuries she sustained when she allegedly slipped and fell on a foreign substance on a grocery store floor. Miller named as the defendant, Winn-Dixie of Louisiana, Inc. (Winn-Dixie) the owner of the store in which she fell.
On Monday, February 13, 1984, Miller was shopping at the Winn-Dixie store in Eunice, Louisiana. While looking for soup on aisle No. 3, Miller avers that she slipped on dry spaghetti which had spilled onto the floor, causing her to fall to the floor and injuring her lower back.
Subsequent to a trial on the merits, a jury, pursuant to jury interrogatories, found that neither Winn-Dixie nor Miller were guilty of any legal fault, assigned a zero percentage of fault to both parties and concluded that Miller's damages amounted to $15,000.00.[1] Judgment was rendered in accordance with the determination of the jury, dismissing Miller's suit at her cost.
Miller, concluding that the jury had erred, moved the Court for a judgment notwithstanding the verdict, La. Code Civ. Proc. art. 1811 (1960) (amended 1979, 1983 and 1984), additur, La. Code Civ. Proc. art. 1814 (1960) (amended 1983) and, in the alternative, motioned the Court for a new trial, La. Code Civ. Proc. art. 1971 et seq. The plaintiff rested her motion for a judgment NOV on the allegations that she had established her case by a preponderance of the evidence and that the defendant had failed to exculpate itself from liability with proof sufficient to establish that the spaghetti had not been placed on the floor by one of its employees and that adequate measures had been taken to discover and eliminate hazardous conditions. The plaintiff's motion for additur rested on the argument that the jury's conclusion that her damages only amounted to $15,000.00 was "grossly inadequate" and that it should be raised to an "amount between $45,000.00 and $150,000.00."
The Trial Court denied all of Miller's motions. The Court held that although it did not agree with the decision of the jury as to the adequacy of the measures undertaken by Winn-Dixie to discover and eliminate harmful conditions, in order to grant the plaintiff's motion for a judgment NOV it "would have to substitute its Judgment for the Judgment of the Jury on the facts." The Court further stated that additur would be inappropriate under the circumstances and that a new trial should not be granted because "everything that can be said, done or argued has been presented."
Miller sought this appeal and has assigned three errors. Miller maintains:
(1) The Trial Judge erred in concluding that Rougeau v. Commercial Union Insurance Co., 432 So.2d 1162 (La.App. 3rd Cir.1983), writ denied, 437 So.2d 1149 (La.1983) prevented him from substituting his judgment for that of the jury in ruling upon her motion for a judgment notwithstanding the verdict;
(2) The jury erred in concluding that Winn-Dixie had rebutted her case-in-chief by presenting evidence that it had undertaken adequate measures to discover and eliminate potentially harmful situations; and
(3) The jury erred when it concluded that she had only sustained damages amounting to $15,000.00.
The first issue on appeal addresses the Trial Court's decision not to grant the plaintiff's motion for a judgment notwithstanding the verdict. The Trial Judge in his "Reasons For Judgment" concluded that "to reverse the Judgment on NOV, the Court would have to substitute its Judgment for the Judgment of the Jury on the *991 facts." The Trial Judge further stated that such a "substitution" of judgment was contrary to the decision of this Court in Rougeau.
We held in Rougeau that the standard for granting a judgment NOV was the same standard applied in determining whether to grant a motion for a directed verdict. In referencing the District Court's reasons in Rougeau we quoted with approval from Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), in which the United States Fifth Circuit held:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury. Rougeau, supra, at 1166.
Miller contends that it would not have been inappropriate for the Trial Judge to have granted her motion for a judgment NOV because of exceptions to the above stated rule. In support of her position Miller, in her brief, quoted from another aspect of the Rougeau decision which provides:
Although credibility determinations and evaluations of evidence are reserved to the jury, where virtually no factual dispute exists, no credibility determinations by the factfinder (i.e., the jury) are required. In such a circumstance, questions of existence of a duty, violation of that duty by the defendant, and assumption of the risk or contributory negligence by the plaintiff are legal questions, and certainly within the province of the judge. Rougeau, supra, at 1166, quoting, Rawls v. Damare, 377 So.2d 1376, 1379 (La.App. 4th Cir.1979), writ denied, 380 So.2d 72 (La.1980).
We do not believe that the Trial Judge erred. This case did not solely involve a question of law, i.e. the violation of the duty Winn-Dixie owed Miller. We believe that there were credibility determinations, particularly concerning Miller's alleged fall and the extent of Winn-Dixie's precautionary measures, which were properly the province of the jury. It is for these reasons that we are unable to conclude that the Trial Judge erred when he denied the plaintiff's motion for a judgment notwithstanding the verdict.
The second issue on appeal addresses the jury's finding that Winn-Dixie was not guilty of any legal fault which was a proximate cause of Miller's injuries. Jury determinations in our system of justice are to be accorded great respect and should not be disturbed unless they are clearly wrong. Meyers v. Imperial Casualty Indemnity Co., 451 So.2d 649 (La. App. 3rd Cir.1984). It is the province of the trier of fact when there are conflicts in testimony to render reasonable evaluations of credibility and to draw reasonable inferences from the facts. Building Specialties, Inc. v. State Farm Mutual Automobile Insurance Co., 440 So.2d 984 (La.App. 3rd Cir.1983). Subsequent to our review of the law, particularly recent Louisiana Supreme Court jurisprudence, and the record, we conclude that the jury's determination is manifestly erroneous and, therefore, reverse the judgment of the lower court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The initial burden, in "slip and fall" cases, is on the plaintiff to establish that she slipped on a substance on the defendant's floor, and that she sustained injuries. The burden of proof then shifts to the defendant-store owner to rebut the presumption of negligence and exculpate itself from liability by establishing that it exercised such a degree of care that it would have known, under most circumstances, of the harmful situation created by one of its *992 customers and that none of its employees created the hazard. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La. 1984).
The Louisiana Supreme Court in Brown stated that the duty of the store owner to undertake measures which would lead to the discovery of dangerous conditions "must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store, and other such considerations." Id. at 687. The Court in Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976) held that among the factors a trier of fact should consider in determining the reasonableness of a store owner's protective measures are: (1) the type and volume of merchandise; (2) the type of display; (3) the floor space utilized for customer service; (4) the nature of customer service; and (5) the volume of business.
The plaintiff, in the instant case, set forth her case-in-chief and the initial question presented to us on review is whether the jury was manifestly erroneous in concluding that the defendant-store owner had rebutted her case with proof of legally adequate safety and cleaning procedures. Winn-Dixie, in support of its position, brought forth evidence establishing the measures it undertook to prevent customer injuries. The defendant-store owner established that its assistant manager was required to work approximately eighty-five percent of his work-day on the floor of the store and that he was to walk the entire store once every hour specifically in search of items which may have fallen off the shelves. Winn-Dixie also established that it trains all of its employees through personal explanation, pamphlets and video tapes to be on constant alert for foreign objects on the floor and the procedure to follow upon finding a potentially hazardous situation.
Winn-Dixie also brought forth evidence that it had a regular policy of cleaning its floors, although the exact policy is not clearly discernible from the record. John Greenman, the defendant's assistant manager and the person responsible for the store at the time of Miller's accident, testified at trial that it was store policy to dust mop and check for foreign objects every day at 7:00 a.m., noontime, between 4:00 and 5:00 p.m. and to both dust and wet mop the store at closing time. Greenman, in his deposition which he stated at trial was correct, testified that the store policy was to dust mop every day at 10:00 a.m., between 12:00 and 1:00 p.m. and a third time between 3:00 and 4:00 in the afternoon. Although there are time differences between Greenman's testimony at trial and his deposition, the jury apparently did not find them significant. The jury, without attempting to speculate on its deliberations, could have downplayed the significance of the differences because of the extremely argumentative nature of the plaintiff's cross-examination.
The jury's conclusion, that Winn-Dixie had rebutted Miller's evidence of negligence as regards its cleaning standards, apparently rests on the belief that the defendant-store owner had fully complied with its duty under the law. Our careful review of the record herein leads us to the conclusion that the jury verdict on this question should not be disturbed, there being an absence of manifest error. In order to agree with the plaintiff, we would be required to substitute our opinion for that of the jury and, thereby, violate one of the cardinal principles of appellate review.
Despite concluding that the jury correctly resolved the question of whether Winn-Dixie had fulfilled its duty of exercising care to learn of and eliminate hazardous situations created by its customers, recent Supreme Court jurisprudence addressing the defendant-store owner's other burden, that of proving that its employees did not create the hazard, strongly indicates that we must reverse the judgment of the lower court. The Louisiana Supreme Court in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987), reversing both the District Court and the Court of Appeal, rendered judgment in favor of a slip and fall victim reasoning that "[m]any of the employees who could have caused the spill were not asked to testify." Id. at 1136. *993 The Court arrived at this decision despite the fact that Wal-Mart had called as witnesses, the managerial personnel who had investigated the accident, the clerical employees who were responsible for the area of the store in which the plaintiff fell and the employees who responded to the plaintiff's calls for assistance.
In the instant case, the only store employees who testified on behalf of Winn-Dixie were Greenman, the assistant manager and Jennifer Christophe, the clerk who assisted Miller after the incident. Neither employee was directly asked whether they had created the hazard, although their testimony indicates that they did not.
We believe reversal is mandated by the McCardie decision because there were other Winn-Dixie employees, department managers, check-out personnel and clean-up personnel, who were not called to testify, but who, if one expands the realm of possibility, might have caused the spaghetti to fall to the floor. Our reversal rests entirely on the McCardie reasoning which to us stops just short of imposing liability without fault.
McCardie was decided by a four to three vote. One dissenting Justice thought that the majority opinion might place an impracticable and almost insurmountable burden of proof on defendantstore owners, and another thought that it would require proof of a negative.[2]
The final issue on appeal concerns the amount of damages sustained by Miller as a result of the fall. Although the jury determined that plaintiff suffered damages totalling $15,000.00, because it was unnecessary for the jury to render this determination subsequent to concluding that Winn-Dixie was free from fault, we are not bound on appeal to a mere review of that decision for manifest error. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). Pursuant to constitutional authority, under circumstances such as the instant when an appellate record is factually complete, the Court of Appeal has jurisdiction to render whatever judgment it deems to be appropriate. La. Const. art. 5 § 10 (1974). We will, therefore, render that decision which we believe to be correct based upon the facts presented.
Miller suggests that she has endured discomfort and will continue to suffer disability as a result of her fall. She maintains that she has undergone emotional trauma and that her life will not be as enjoyable as previously anticipated. The plaintiff now contends that $503,000.00 would make her whole and itemizes her losses as follows:

 (1) Physical pain and suffering, past,
 present and future $100,000.00
 (2) Mental anguish, pain and suffering,
 past, present, and future $100,000.00
 (3) Medical expenses, past, present,
 and future $31,000.00
 (4) Economic loss and loss of economic
 capacity $172,000.00
 (5) Loss of enjoyment of life $100,000.00

Winn-Dixie suggests that the jury's conclusion that $15,000.00 would make Miller whole is an appropriate award. The defendant questions awarding Miller a more substantial sum noting that numerous weaknesses and discrepancies exist in her testimony. Winn-Dixie directs the Court's attention to, among other inconsistencies and weaknesses:
(1) Miller, at trial, stated that she was pushing her shopping basket when she fell, however, in her deposition she said she was not pushing the basket;
(2) The plaintiff told an investigator shortly after the fall that she slipped on her left foot, she stated during her deposition that she slipped on her right foot but, at trial, she said she could not remember which foot slipped;
(3) When questioned during a deposition about working prior to the incident she said she had not worked for nine months but, at trial, she said that her deposition testimony was incorrect and that she was working, but she was being paid in cash; and
*994 (4) Miller testified that when she sought employment subsequent to the incident she told her prospective employer, Boo's Steakhouse in Eunice, La., that she had a back injury. Boo's manager contradicted Miller's testimony, testifying that he was never told about an injury, that Miller had marked "No" on an employment questionnaire regarding the presence of any physical ailments and he further stated that Miller did her job of cleaning, moping, sweeping and managing a salad bar without incident.
Our review of the evidence convinces us that Miller is entitled to recover her medical expenses and damages, but only for past physical pain and suffering and past mental anguish. We do not believe the evidence supports her claims for present or future physical or mental suffering, future medical expenses, economic loss or loss of economic capacity, or loss of enjoyment of life.
Our primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering. La.Civ.Code art. 1999 (1984); Head v. St. Paul Fire & Marine Insurance Co., 408 So.2d 1174 (La.App. 3rd Cir.1982), writ denied, 412 So.2d 99 (La.1982); Anthony v. Hospital Service District No. 1, 477 So.2d 1180 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986). We believe $15,000.00 adequately compensates Miller. Although we have not been called upon to review the jury award in accordance with the manifest error standard, we are mindful of the jury's judgment and the fact that the appellee was satisfied with that decision. We are of the opinion that this award is in the upper limits of our discretion, but do not believe that it is so high as to be considered an abuse of discretion.
Miller was a customer in the Winn-Dixie store at the time of her fall. She was shopping and she slipped on spaghetti which Winn-Dixie was unable to establish was not on the floor. Although Miller alleges great and disabling injuries, the evidence which supports that conclusion is subjective. We believe, contrary to the plaintiff's position, that the evidence only establishes a minimal degree of pain and discomfort, and no permanent disability.
Miller has alleged lower back pain and claims that this pain has totally disabled her. The evidence does not substantiate her allegations. The medical evidence consists of, among other relevant facts, three CT scans. The first was performed subsequent to a 1981 work-related accident and the latter two, a 1984 and a 1986 scan, were performed subsequent to the Winn-Dixie incident. The testimony of the doctors, including the plaintiff's doctor, who interpreted the CT scans established that there were no additional or aggravating injuries to Miller's back. The sole injury reflected by the '84 and '86 scans was also reflected by the '81 scan.
Doctor McDaniels, whom we are aware testified for the defense, examined Miller's back and legs just prior to trial and stated that she had a normal gait to her walk, a normal range of motion, normal reflexes, normal sensory reactions and good motor output with no atrophy evident. Doctor McDaniels was of the opinion that Miller could return to any type of physical activity.
The evidence does, however, reveal that she did experience some physical discomfort and a degree of emotional concern. See, Jolivette v. Safeco Insurance Co., 379 So.2d 1213 (La.App. 3rd Cir.1980); Neames v. Fidelity General Insurance Co., 206 So.2d 575 (La.App. 1st Cir.1968); Buckelew v. Plunkett, 242 So.2d 372 (La.App. 2nd Cir.1970); Gagnet v. Zummo, 487 So.2d 721 (La.App. 5th Cir.1986). Miller testified that she was pregnant at the time of the incident and that she experienced "spotting" subsequent to her fall. Although Doctor Kulkarni, the OB/GYN who examined her, found no evidence of spotting, Miller was concerned enough to check herself into the hospital subsequent to borrowing $400.00 which the hospital demanded prior to admitting her. Miller's contentions are, however, weakened by the fact that she told the Winn-Dixie investigator shortly after the fall that she had experienced a trouble-free pregnancy before the fall, but *995 she testified at trial that she, in fact, had not had a trouble-free pregnancy. Subsequent to the examination, Doctor Kulkarni informed Miller that she and her unborn child were fine.
Miller's general allegations of lower back pain and suffering also come into question because her last visit to Doctor Anders, her orthopedic surgeon, was approximately eighteen months prior to trial. Miller maintains that she discontinued seeking medical treatment because it was a financial burden. Doctor Anders, however, testified that he routinely told all of his patients that if they were unable to afford his treatment they should seek treatment at University Medical Center. Miller was apparently aware of the opportunity to seek treatment at UMC because while under observation by an investigator for the appellee she and a companion went to UMC. Miller did not, however, testify that she went to the hospital in search of medical attention for her back.
We believe $15,000.00, which includes $1,171.30 in medical expenses, adequately compensates Miller. Her physical and emotional suffering was not established to be severe or of great duration. The evidence further indicates that this fall should not prevent her from enjoying normal physical activities or returning to work.
For the above and foregoing reasons, the judgment of the District Court in favor of Winn-Dixie of Louisiana, Inc., the defendant, and against Victoria Miller, the plaintiff, is reversed.
Judgment is now rendered in favor of Victoria Miller and against Winn-Dixie of Louisiana, Inc., in the amount of $15,000.00, with interest at the legal rate from the date of judicial demand until paid.
All costs, at trial and on appeal, are assessed against Winn-Dixie of Louisiana, Inc.
REVERSED AND RENDERED.
NOTES
[*] Honorable Edmund M. Reggie, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The Trial Judge submitted interrogatories to the jury which included the issue of quantum. The interrogatories did not advise the jurors to refrain from addressing the quantum issue should they find the defendant free from fault.
[2] We respectfully recommend that the Supreme Court grant a writ of certiorari in the case sub-judice in view of the closeness of the vote in McCardie, and the fact that one Justice who voted with the majority therein voted to grant a rehearing.