391 So.2d 1185 (1980)
Edward J. LaGRAIZE, Jr.
v.
Artis BICKHAM, Lonnie Bickham, State Farm Mutual Automobile Insurance Company, Interstate Fire & Casualty Company, American Southern Insurance Company and Commercial Union Insurance Company.
No. 11004.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1980.
On Rehearing November 25, 1980.
Rehearing Denied January 19, 1981.
*1186 Lambert, Nowalsky & Lambert, John D. Lambert, Jr., New Orleans, for plaintiff-appellant.
David M. Packard, Metairie, for defendant-appellee, Continental Insurance Co.
Bienvenu, Foster, Ryan & O'Bannon, Leonard A. Young, New Orleans, for defendants-appellees, Lonnie Bickham and State Farm Mutual Automobile Insurance Co.
*1187 Drury & Lozes, James H. Drury, New Orleans, for defendants-appellees, Carlo Ditta, Inc. and Commercial Union Insurance Co.
Weigand & Siegrist, Joseph J. Weigand, Jr., Houma, for defendant-appellee, Argonaut Southwest Insurance Co.
Before SAMUEL, REDMANN and SARTAIN, JJ.
SARTAIN, Judge.
In this case, Edward J. LaGraize, Jr. appeals the inadequacy of a civil jury award for personal injuries and special damages. We affirm.
LaGraize allegedly received serious bodily injuries on January 6, 1975, when the vehicle he was driving was hit from the rear by a truck driven by Artis Bickham and owned by his brother, Lonnie Bickham. He named as defendants both Bickhams and State Farm Mutual Automobile Insurance Company, the liability insurer of the Bickham truck; Carlo Ditta, Inc., the Bickhams' employer and Commercial Union Insurance Company, the liability insurer of Ditta. At the time of the accident LaGraize was driving a vehicle owned by his employer, New Orleans Armature Works. He joined as an additional defendant his employer's uninsured motorist carrier, Argonaut Southwest Insurance Company. Argonaut also intervened to recover the amounts it had paid under a workmen's compensation insurance policy under the provisions of R.S. 23:1103. The personal injury claim was tried to the jury and the workmen's compensation carrier's intervention was tried to the trial judge.
The jury returned a general verdict in favor of plaintiff in the amount of $15,000.00. Judgment was entered in this amount in favor of the plaintiff and against the aforementioned defendants on the main demand. State Farm's liability was limited to $4,400.00, the balance remaining under its liability coverage. The trial judge also entered judgment in favor of the workmen's compensation intervenor, Argonaut, in the amount of $235.00 for medical payments paid on behalf of plaintiff and for such other amounts as may be paid to the plaintiff in the future under the latter's workmen's compensation suit.[1] Plaintiff's motions for an additur and a new trial were overruled. This appeal followed.
Intermediate appellate review in quantum cases is now governed by the recent case of Reck v. Stevens, 373 So.2d 498 (La.1979). In Reck the court reemphasized previous decisions interpreting C.C. art. 1934(3) and the "much discretion" accorded the trier of fact under the article. Before an award may be considered as either excessive or inadequate, there must be an analysis of all of the facts and circumstances peculiar to the case at hand, including the individual claimant, and an initial determination based on such an analysis that there has been a clear abuse of the "much discretion" by the trier of fact. Only then may previous awards be resorted to as an aid in determining an appropriate award in the case under review. The quantum then may be reduced (or raised) to the highest (or the lowest) amount that is reasonably within the discretion of the trial court (judge or jury). Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). With these principles in mind, we look to the pertinent facts and circumstances in the instant matter.
On the day of the accident (January 6, 1975) plaintiff was seen by Dr. Truman Kerr, an orthopedic specialist. X-rays at the time of the upper and lower regions of the back evidenced no abnormalities. Plaintiff was given an injection of tetanus toxoid for an abrasion of the arm, a muscle relaxant, and Tylenol for his back complaints. Besides the abrasions of the left arm, Dr. Kerr was of the opinion that plaintiff sustained a muscle strain of the lumbosacral *1188 region. Dr. Kerr continued to treat plaintiff for a lumbosacral strain until March 24, 1975, at which time he discharged him. In the meantime, plaintiff complained of pain in the neck and arm and after prolonged sitting of pain in the back. Dr. Kerr attributed these latter complaints to an arthritic condition which was evidenced by the previous X-rays and prescribed an anti-inflammatory medicine known as Motrin. On a following visit he changed the prescription to another arthritic medicine known as Indocin. When this latter medicine proved ineffective, he had plaintiff return to Motrin. Dr. Kerr continued to treat plaintiff for an arthritic condition from September 11, 1975 until June 17, 1977. On a substantial number of these visits, plaintiff's major complaint was of pain in the cervical region, although admittedly on some of these occasions he did complain of low back pain. It also appeared that the Motrin prescription gave him some relief and on at least five visits to Dr. Kerr he expressed no complaints concerning his lower back. Repeated orthopedic examinations on these occasions revealed no disc-related problems. However, on the visit of June 17, 1977 plaintiff complained of pain in the left arm and buttock. This buttock complaint was the first indication to Dr. Kerr of a possible disc disorder, albeit subjective. Dr. Kerr then recommended that plaintiff see Dr. J. Carlos Pisarello, a neurosurgeon.
Conservative treatment administered by Dr. Pisarello was unsuccessful. Following a myelogram which proved positive, he performed a laminectomy on plaintiff at the L-4 level. This operation was performed on August 9, 1977. He last examined plaintiff on February 13, 1978, and considered the operation successful.
Both Dr. Kerr and Dr. Pisarello were of the opinion that the accident of January 6, 1975 resulted in disc injury.
There is, however, a serious factual dispute relative to the issue of causation. Neither of the above specialists were informed, or at least they made no note of it, of an incident that occurred in early February, 1977, when plaintiff experienced severe pain in his right arm and leg as he applied the brakes on his vehicle. He was in such discomfort that he returned home and did not go to work for the remainder of the day. Plaintiff stated that he called Dr. Kerr immediately for an appointment. Dr. Kerr's notes of that visit (February 1, 1977) and of the next visit (April 5, 1977) make no reference to the incident. While Dr. Kerr's notes of the February 1 visit indicate some back pain, the notes refer to "some tingling sensation in the arm and this lasted two days" and has presented "no problems since". Dr. Kerr's notes of the April 5 visit indicated some low back pain but nothing involving leg or buttock discomfort. X-rays taken in this later visit evidenced only the previously noted arthritic condition. Neurological examination by Dr. Kerr on both of these visits were normal.
On March 29, 1977 plaintiff, on his counsel's request, was seen by Dr. E. J. Dabezies, an orthopedic surgeon. This doctor, however, was called as a witness for the defendants. His testimony is to the effect that he could not associate the accident in January, 1975 to the herniated disc in June 1977. He stated in fact "to weigh this properly I think that the time interval is definitely a little bit too long." His conclusion was that the accident aggravated a previously existing dormant arthritic condition.
Mr. LaGraize, who was 57 years of age at the time of the accident, testified that he had experienced no back trouble prior to the accident. He was employed as a supervisor and was then earning a salary of approximately $15,000.00 per year. His employer continued his salary, including the week he was off work following the accident and during the periods of hospitalization in 1977. At the time of the trial plaintiff was earning a salary of $19,700.00 per year. While his supervisory position did not require it, plaintiff continued to assist in the moving of heavy machinery. He acknowledged that he performed the same duties for his employer from the date of the accident until the date of his surgery. However, he strongly contends that he was *1189 never relatively free of back pain throughout this period of time and still had similar pain and discomfort as of the date of the trial on the merits, March 5, 1979. His testimony relative to back pain is corroborated by that of his wife and a co-worker.
Germane to the issue of quantum, plaintiff introduced medical bills totaling the sum of $6,146.23. As stated above, the jury rendered a general verdict in the amount of $15,000.00.
Plaintiff contends that the award is grossly inadequate for two reasons: (1) the amount of medical expenses, if deducted, allows only approximately $9,000.00 for pain and suffering and residual disability; and (2) the jury award may be reduced even further by virtue of the judgment in favor of the workmen's compensation insurer-intervenor. We shall address these contentions in reverse order.
R.S. 23:1103 provides:
"In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment.
"No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him. As amended Acts 1958, No. 109, § 1."
With respect to the apportionment of the jury award as between plaintiff and Argonaut, it may be helpful to particularize certain facts relative thereto. Prior to the trial on the merits in the instant matter, plaintiff was successful in his workmen's compensation suit against Argonaut. In that litigation he was awarded judgment (under the old Act) at the maximum rate of $65.00 per week for a total of 500 weeks and medical expenses of $5,882.08. This matter is now before this court on a suspensive appeal. The only medical payments made by Argonaut in the present tort suit were in the sum of $235.50 and judgment was awarded to it against plaintiff's award in this amount and for such other sums as Argonaut may be cast in the workmen's compensation suit.[2]
Plaintiff contends that inasmuch as he has continued to receive his salary from his employer he was precluded from claiming loss of wages in the present litigation. However, he now argues that it was error for the trial judge to refuse to permit him to acquaint the jury with the fact that any award it made to him would be subject to and burdened with a possible claim by the workmen's compensation carrier. We find this contention to be without merit and concur in the ruling of the trial judge. What plaintiff is in essence urging is that the jury might have been influenced thereby to award him a larger sum for pain and suffering.
The claim of plaintiff in tort for whatever items he is permitted in law to urge is one matter. The rights to reimbursement by either his employer or the latter's insurer is another matter. To accede to plaintiff's wishes in the instant case, as it relates *1190 to these rights, would tend to submit the tort-feasor to double exposure. The fact remains that for whatever reason he may have had, plaintiff chose not to make loss of wages an element of damages in his tort claim. Having made this decision he is bound by it.
The second contention of error, namely the inadequacy of the jury award when viewed in the light of extensive medical expenses, directs itself to the question of sufficiency of the general verdict.
As in all jury verdicts neither the presiding judge nor the appellate court has the benefit of findings of fact. If the jury concluded that the herniated intervertebral disc suffered by the plaintiff in June, 1977 resulted from the trauma in January, 1975, the total sum of $6,000.00 for medical expenses is attributable to the accident. If instead the jury believed plaintiff sustained only a lumbosacral strain in January, 1975, which aggravated a preexisting arthritic condition, only a small portion of the medical expenses would be related to the accident. If the first determination were made by the jury we would frankly conclude the award to be inadequate. If the second conclusion was reached by the jury, we would deem the award to be well within its discretion. There is substantial conflicting credible evidence, which we have noted above, in support of either conclusion. It is for this reason that we find no manifest error in the result reached by the jury. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973); Reck v. Stevens, above.
This brings us to the final issue. Shortly after the judgment was signed, the defendants on April 5, 1979 deposited the sum of $18,788.14 in the registry of the court. This sum purportedly represented the face amount of the jury award, court costs, and accrued interest. Subsequently (June 8, 1979) the defendants deposited the additional sum of $576.00, representing jury fees. The court order permitting the deposit, in pertinent part, provided that the sum "shall rest in the Registry of the Court for the account of Edward J. LaGraize, Jr., and Argonaut Southwest Insurance Company, as their interests may appear, to be withdrawn by the said plaintiff and intervenor at all (sic) and without prejudice upon their filing of appropriate motions and the giving of proper receipt therefor."
Plaintiff filed two pleadings directed to the deposit. The first pleading was an objection on the grounds that C.C.P. art. 4652 required that defendants-insurers deposit the full limits of their respective policy coverage. The second pleading, in the alternative, was a request to withdraw the funds without prejudice under the authority of State Farm Mutual Automobile Insurance Co. v. Ray, 161 So.2d 148 (La.App. 3rd Cir. 1964); writ refused, May 4, 1964.
C.C.P. art. 4652 relates to concursus proceedings and it does require that before an insurance company can provoke the same it must admit liability and deposit the full amount of its policy limits. However, we do not find the article applicable under the present circumstances because this is not a concursus matter. The question is whether any defendant, once cast in judgment, may deposit in the registry of the court the full amount of the judgment, together with accrued costs and interest and thereby be relieved of added costs and interest in the event of an appeal by the plaintiff.
Plaintiff contends that there is no authority for such a procedure.[3] This we concede but we know of no statute or codal provision that prohibits such a procedure and sanction the same under the following conditions: There first must be a tender to and refusal to accept by the judgment creditor. The tender and/or the deposit must be for the full amount of the judgment, including costs and interest. It must be unconditional and constitute a complete waiver of any future defense as to liability on the part of the judgment debtor. Acceptance of the tender and/or withdrawal of the funds by the judgment creditor(s) is without prejudice to any of its (their) rights to appeal as *1191 to quantum. In the event of an increase in quantum on appeal, the judgment debtor is liable for all additional costs together with legal interest on the amount of the increase from date of judicial demand until paid. Under the above, the advantages to both the judgment creditor and debtor are apparent. The former has the benefit of his money and the latter is relieved of certain additional costs and neither is harmed.
The evidence in the trial court on the appropriateness of the deposit procedure invoked by the defendants and plaintiff's request to withdraw the funds was not transcribed. We can only assume that the same objections raised in the briefs submitted to us and in oral argument before us were also presented to the trial judge.
Plaintiff contends that neither the judgment in response to the jury verdict nor the order relating to the deposit should contain any reference to Argonaut for the primary reason that Argonaut has taken a suspensive appeal in the compensation suit and the judgment rendered therein is not final. He also contends that just the offering of the compensation judgment in the record is insufficient to prove intervenor's claim. Argonaut responds that when plaintiff's request to withdraw the deposited funds without restriction as to its (Argonaut's) rights was denied by the trial judge, plaintiff declined to take the money.
We think that plaintiff has misconstrued the purpose and intent of R.S. 23:1103, above.
The rights accorded an intervening compensation insurer under the statute and the jurisprudence interpreting the same are both retrospective and prospective. Such rights are retrospective in the sense that at the time of the finality of the tort judgment, the intervenor is entitled to immediate reimbursement of all sums actually paid as compensation benefits. In the instant case that is the $235.00, stipulated as medical expenses. The rights are prospective in the sense that the intervenor is entitled to a credit against future payments of compensation benefits, i. e., pro tanto release, until the amounts of such compensation benefits equal the balance remaining from the tort judgment. In the instant case, the intervenor has paid no weekly benefits and no other medical and is not required to do so until those amounts equal the presently remaining balance in the tort fund. The fact that the compensation suit is not final is of no consequence at this juncture. The actual accounting as between plaintiff and Argonaut vis a vis the tort suit and the compensation suit of necessity must await the final outcome of the latter litigation. In the meantime, the only claim Argonaut has to the tort award is the sum of $235.00. Billedeaux v. Adams, 360 So.2d 637 (La. App. 3rd Cir. 1978); Lachney v. Motor Parts & Bearing Supply, 357 So.2d 1277 (La.App. 3rd Cir. 1978); and Billeaud v. United States Fidelity & Guar. Co., 349 So.2d 1379 (La.App. 3rd Cir. 1977). See also Malone & Johnson, Workers' Compensation, 14 Louisiana Civil Law Treatise, Sec. 370.
Returning to the question of the deposit, we find the same to be without legal effect for two reasons. First, there is no showing whatsoever that any tender was made to the plaintiff prior to the deposit. Second, the deposit itself was inadequate. It did not initially include $576.00 jury cost. When this sum was added to the deposit on June 6, 1979, additional interest for the intervening month and a day was not included.
For the above reasons the judgment of the district court is affirmed. All costs relating to this appeal are to be borne by appellant. All other costs are assessed against defendants-appellees.
AFFIRMED.

ON REHEARING
We granted a general rehearing in this cause to reconsider our conclusion relative to quantum and in particular the claim of the intervenor (workers' compensation insurer) in light of the recent decision of the Supreme Court in Fontenot v. Hanover Ins. Co., 385 So.2d 238 (La.1980).
We reaffirm our determination as to quantum for the reasons stated in the original *1192 opinion. In short, we concluded that the jury's general award of $15,000.00 was based on its determination that plaintiff sustained a lumbosacral strain which aggravated a preexisting arthritic condition and not the herniated disc with attending medical expenses as plaintiff had urged. We found no manifest error and that the award itself was within the jury's discretion.
The workers' comensation suit referred to in footnote 1 of our original opinion has now been heard and affirmed by another panel of this court. It is cited at 387 So.2d 687 (La.App. 4th Cir. 1980) and as of this writing writs are pending before the Supreme Court. In the compensation suit judgment in favor of plaintiff was based on the determination that he sustained a lumbar disc herniation and incurred medical expenses therefor in the amount of $5,882.08, a conclusion rejected by the jury in the instant (tort) action.
In Fontenot v. Hanover Ins. Co., above, the Supreme Court held that an intervening workers' compensation insurer could not claim reimbursement for medical expenses paid an injured employee under the act where that employee was unsuccessful in recovering these expenses from the third party tortfeasor. The court reasoned: "The underlying policy of the workers' compensation statute provisions for apportionment of damages between employer and employee in suits against third persons merely prevents an employee's double recovery for his injuries; it does not require an employee to reimburse out of his award for pain and suffering medical expenses which he failed to recover from a third party tortfeasor." 385 So.2d 238, 239.
The judgment in the instant case awarded the intervening workers' compensation insurer the sum of $235.00 as reimbursement for medical expenses and "for the amounts awarded against it" (Argonaut) in the compensation suit. This latter sum, as noted above, was in the amount of $5,882.08. Applying Fontenot to the facts in the cause now before us, we hold that intervenor, Argonaut Southwest Insurance Company, is only entitled to receive out of plaintiff's award as reimbursement for medical expenses the sum of $235.00. Intervenor is not entitled to a credit of $5,882.08 for the medical expenses denoted in the compensation suit for the reason that plaintiff's claim for these expenses was rejected by the jury.
Intervenor has paid plaintiff no weekly compensation benefits as he has continued to work for and receive his salary from his employer. The judgment in the compensation suit, however, in pertinent part awarded "plaintiff 500 weeks of workman's compensation at the rate of $65.00 per week beginning January 13, 1975. Said defendant is to receive one week's credit of compensation paid for each week's wages paid to plaintiff in lieu of compensation."
Plaintiff claims that under the wording of the compensation judgment Argonaut is now entitled to either insist on reimbursement of $65.00 per week since January 13, 1975 which will consume his entire judgment[1] or plaintiff must wait a commensurate number of weeks before he is entitled to weekly benefits in the event he seeks the same. Argonaut on the other hand takes the position that plaintiff has misconstrued the statute and jurisprudence noted in our original opinion. It states that when the time comes that plaintiff is entitled to weekly compensation benefits it is entitled to a credit equal to the balance remaining in the tort fund before it is obligated to pay the same. We think Fontenot has rendered both of these contentions moot.
While Fontenot admittedly dealt with reimbursement for medical expenses, its rationale clearly contemplates reimbursement for weekly compensation benefits. To paraphrase (385 So.2d at 239), the compensation statute "does not require an employee to reimburse out of his award for pain and suffering [the weekly benefits for wage-replacement] which [wage-replacement] he failed to recover from a third party tortfeasor." Accordingly, Argonaut's right as an intervening compensation insurer is limited *1193 to reimbursement for expended medical expenses in the sum of $235.00, and the judgment of the district court will be amended to reflect the same.
With respect to the funds on deposit the defendants again urge that they be relieved of the additional costs and legal interest incurred after the deposit. In essence, they contend that the dispute between plaintiff and intervenor concerning these latter parties' rights should not redound to their (defendants') detriment. It is also conceded that the jury cost ($576.00) was not reflected in the clerk's cost sheet and when it was called to defendants' attention the deposit was immediately supplemented. We can sympathize with defendants' argument but the fact remains that total tender was not made. While the dispute between plaintiff and intervenor did place defendants in a difficult position, they must take the proceedings as they find them and where, as here, the dispute is not an arbitrary or capricious one, tender and release isn't possible. We hold the registry-deposit to be invalid. The funds on deposit now should be immediately released to the defendants-depositors. The plaintiff is entitled to collect on his judgment when the same becomes final as though the deposit was never made.
For these reasons the judgment of the district court relating to Argonaut's intervention is amended to read as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Argonaut Southwest Insurance Company's rights under this judgment and against the named defendants is limited to the sum of $235.00 and judgment is therefore rendered in favor of Argonaut Southwest Insurance Company in this amount and against defendants, Artis Bickham, Lonnie Bickham, State Farm Mutual Insurance Company, Carlo Ditta, Inc., Commercial Union Insurance Company, and Edward J. LaGraize, Jr., together with legal interest thereon until paid."
The judgment of the district court is further amended to declare the registry-deposit made by defendants on April 5, 1979 and June 8, 1979 to be void and without legal effect.
Accordingly, for reasons stated in our original decree the judgment of the district court is amended as hereinabove provided and, as amended, is affirmed. The cost of this appeal is to be divided equally between plaintiff and intervenor.
AMENDED AND AFFIRMED.
NOTES
[1] Placed in the record was a copy of the judgment rendered in suit No. 77-10121 from the Civil District Court for the Parish of Orleans, Division I, entitled Edward J. LaGraize, Jr. v. New Orleans Armature Works, a Division of Electrical Industries, Inc. and Argonaut Southwest Insurance Company.
[2] Ibid. The actual wording of the judgment in the workmen's compensation suit is:

"Said defendant is to receive one week's credit of compensation paid for each week's wages paid to plaintiff in lieu of compensation."
[3] Cf. C.C. arts. 2167 and 2168.
[1] For example: January 13, 1975 to December 13, 1980 = 308 weeks × $65.00 = $20,020.00.