727 So.2d 485 (1998)
Heath R. GRIFFIN, et al., Plaintiff-Appellant,
v.
INTERNATIONAL INSURANCE COMPANY, et al., Defendant-Appellee.
No. 98-431.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1998.
Rehearing Denied February 22, 1999.
*487 Richard J. Putman, Jr., Abbeville, for Heath Griffin, et al.
Kevin Wade Trahan, for International Insurance Company, et al.
David Arthur Hurlburt, Lafayette, for Ernest Breaux Electrical, Inc.
Troy A. Broussard, for Houston General.
*488 Before DOUCET, C.J., GREMILLION and PICKETT, Judges.
GREMILLION, Judge.
This case arose from an accident at the Graceland Cemetery in Abbeville, Louisiana. On August 28 and 29, 1992, Heath Griffin, his mother, Peggy Griffin, and cousin, Ryan Hardy, were cleaning the cemetery of debris left behind by Hurricane Andrew. At that time, Heath was employed by the Masonic Lodge to maintain the cemetery. Some of the destruction of this storm included a `stub' pole which contained a security light located at the cemetery. On August 29, Heath attempted to move one of the guy wires from this pole and made contact with the primary lines running parallel to Graceland Avenue. As a result, Heath and Peggy sustained electrical burns and Ryan received electrical shock while pulling Heath from underneath the lines.
Seven plaintiffs sought recovery from the City of Abbeville, its insurer, International Insurance Company, and Ernest P. Breaux Electrical Contractors, Inc. for the damages suffered. Specifically, Heath sought damages for physical and mental injury, loss of consortium from his mother, damages caused by the injury to another, and loss of enjoyment of life. Peggy sought damages for physical and mental injury, loss of consortium from her son, and damages caused by the injury to another. Larry Griffin, Heath's father and Peggy's husband, sought damages for loss of consortium from his wife and son and damages caused by the injury to another. Kile Griffin, the Griffin's other son, sought damages for loss of consortium from his mother and brother. Ryan sought damages for his injuries. His mother and father, Peggy and Leo Hardy, sought damages for loss of consortium.
The defendants asserted several affirmative defenses including the protection afforded by La.R.S. 9:2800 and force majeure (Act of God). Defendants also asserted that Heath was either wholly or partially at fault in causing this accident.
The trial of this matter was bifurcated with the trial judge determining the culpability of Abbeville and a jury deciding the liability of Breaux Electric. The trial began on January 21, 1997, and on February 6, 1997, the jury found Abbeville one hundred percent at fault and awarded damages in the amount of $1,071,000.00 to Heath Griffin, $143,000.00 to Peggy Griffin, $67,500.00 to Larry Griffin, $15,000.00 to Ryan Hardy, and $5,000.00 to Leo Hardy. The jury did not award damages to Kile Griffin or Peggy Hardy.
The trial judge issued his decision on March 19, 1997 and found Abbeville eighty-five percent at fault, Heath Griffin ten percent at fault, and Peggy Griffin five percent fault. The trial judge awarded damages in the amount $619,200.00 to Heath Griffin, $64,600.00 to Peggy Griffin, $4,250.00 to Larry Griffin, and $8,000.00 to Ryan. The trial judge did not award damages to Kile Griffin, Leo Hardy, or Peggy Hardy.
From these judgments, both the plaintiffs and defendants appeal. The plaintiffs allege thirty-five assignments of error broken down into five subsets. Because many of these assignments are repetitive, we will not address them in the order in which the plaintiffs assigned them. Furthermore, the plaintiffs failed to adequately brief ten assignments. These are deemed to have been abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. Abbeville and International Insurance allege three assignments of error.

ABBEVILLE'S APPEAL
On July 7, 1997, the plaintiffs' filed a motion for dismissal of the appeal by Abbeville and International Insurance, claiming that they had forfeited their right to appeal when they made an unconditional tender and deposited the funds with the court registry. Abbeville and International Insurance claim that they only made the tender in an attempt to stop the accrual of interest pending the appeal following the guidelines provided in LaGraize v. Bickham, 391 So.2d 1185 (La. App. 4 Cir.1980), and did not waive their right to appeal quantum. We agree with the plaintiffs and find that Abbeville and International Insurance forfeited their right to appeal.
*489 In LaGraize, 391 So.2d at 1191, the court devised a procedure whereby the judgment debtor could halt the accrual of interest in the event the judgment creditor appeals:
There first must be a tender to and refusal to accept by the judgment creditor. The tender and/or the deposit must be for the full amount of the judgment, including costs and interest. It must be unconditional and constitute a complete waiver of any future defense as to liability on the part of the judgment debtor. Acceptance of the tender and/or withdrawal of the funds by the judgment creditor(s) is without prejudice to any of its (their) rights to appeal as to quantum. In the event of an increase in quantum on appeal, the judgment debtor is liable for all additional costs together with legal interest on the amount of the increase from date of judicial demand until paid. Under the above, the advantages to both the judgment creditor and debtor are apparent. The former has the benefit of his money and the latter is relieved of certain additional costs and neither is harmed.
On April 23, 1997, a joint motion to deposit $914,195.83, the amount of the trial judge's award plus interest, into the registry of the court and for withdrawal of same was filed. It provides in paragraph three that:
The City of Abbeville and International Insurance Company now desire to deposit into the Registry of this Court, a sum of money equal to the award of damages reflected in said judgment, together with legal interest thereon which has accrued from date of judicial demand through the date of the deposit, and together with all accrued court costs, including expert fees, all so as to eliminate the continued accrual of legal interest pending plaintiffs delay for appeal and/or pending an appeal if taken.
Paragraph 4:
All movers herein ... recognize that the proper procedure which must be followed for the cessation of legal interest ... is defined in Green v. Industrial Helicopters, 560 So.2d 684 (La.App. 3 Cir.1990), and LaGraize v. Bickham, 391 So.2d 1185 (La. App. 4 Cir.1980), and agree that the said procedure requires and will be satisfied by:
. . . .
(2) That this deposit must be unconditional, and constitute a complete waiver of any future defense as to liability on the part of the judgment debtors.
. . . .
IT IS ORDERED
. . . .
(2) THAT said deposits are hereby recognized as unconditional tenders by the judgment debtors to the judgment creditors, which ... are free to withdraw, without any prejudice, whatsoever, against defendants or against any other person, on appeal or otherwise, who may be responsible to them and with such other effects as are described in Paragraph 4 above....
We find that this procedure is only permitted in situations where the judgment creditor appeals and the judgment debtor does not. It is not an unconditional tender if the judgment debtor retained the right to appeal. Furthermore, to permit such an appeal would directly contradict La.Code Civ.P. art 2085, which reads:
An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.
We find that Abbeville and International Insurance voluntarily and unconditionally acquiesced in this judgment. Therefore, we find that although they have halted the accrual of interest on the amount of the judgment tendered, they are prohibited from appealing.

STANDARD OF REVIEW
"[A]n appellate court is called upon to harmonize jury and trial court conflicts in bifurcated trials only when the jury and the judge reach conflicting findings of fact." Hasha v. Calcasieu Parish Police Jury, 94-705, *490 p. 3 (La.App. 3 Cir. 2/15/95); 651 So.2d 865, 869, writs denied, 95-0667, 95-0676 (La.4/28/95); 653 So.2d 592, 593. In considering these differing verdicts, we must keep in mind that the jury had the right and duty to determine the fault of Breaux Electrical while the determination of the fault attributed to Abbeville was the province of the trial judge pursuant to La.R.S. 13:5105.[1] Therefore, we must review each finding concerning the culpability of each party according to the manifest error standard of review. However, given that the findings of the jury and the trial judge concerning damages are in conflict, we will review the record and determine which award is the most reasonable. Id.

FAULT OF BREAUX ELECTRICAL
The plaintiffs complain that the jury's finding that Breaux Electrical was free from fault was wrong because it was tainted by erroneous evidentiary rulings and prejudicial jury instructions. The alleged fault of Breaux Electrical stems from its acts pursuant to a contract with Abbeville whereby it replaced the utility pole that was knocked down during the hurricane. The plaintiffs allege that this replacement was done in a negligent manner. However, Breaux Electrical alleges that it was never permitted to finish the job because Abbeville requested that it work on something else before the replacement was completed.

Jury Instructions
The plaintiffs claim that the trial judge erred by failing to instruct the jury as to the proper duty of care owed by Breaux Electrical and by effectively telling the jury to acquit it. In Lee v. Automotive Casualty Insurance Company, 96-517, p. 3 (La.App. 3 Cir. 11/6/96); 682 So.2d 995, 997, writ denied, 96-2949 (La.1/31/97); 687 So.2d 409, this court stated:
Jury instructions are adequate if they fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. Kaplan v. MissouriPacific Railroad Co., 409 So.2d 298 (La.App. 3 Cir.1981). "An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial." Doyle [v. Picadilly Cafeterias], 576 So.2d [1143] at 1152. This manifest error standard of review may not be ignored unless the proposed jury instructions are so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts. Lewis v. WalMart Stores, Inc., 546 So.2d 267 (La.App. 3 Cir.1989).
The plaintiffs claim that the trial judge failed to explain to the jury how it could find Breaux Electrical responsible. They claim that the trial judge erred by giving instructions on liability only to then state, "I have just given you the specific rules applicable to the City of Abbeville as a utility company and I will now give you specific rules applicable to E.P. Breaux Electrical, Inc., as an electrical contracting company." The plaintiffs claim that this statement effectively segregated the previous twelve pages of discussion on liability from applying to Breaux Electrical. We disagree with this reading of the jury instructions. The trial judge first instructed the jury on the general principals of negligence and then gave instructions regarding the standard of care imposed on electrical utilities. It is after these instructions that the statement the plaintiffs complain of was made. We doubt that the jury interpreted the trial judge's statement to mean that everything before applied only to Abbeville. When read as a whole, these instructions adequately "point up the issues and provide correct principles of law for the jury to apply to those issues." Id.
Next, the plaintiffs allege that the trial judge erred by instructing the jury as follows:
When an accident results from two acts of negligence, one more remote and one occurring later, the presence of the latter cause prevents the finding of liability on one responsible for the more remote cause. The subsequent action of the other persons *491 or entities can constitute intervening acts of negligence which supersede negligent acts of an original tortfeasor.
"Causation is a question of fact which is entitled to great weight and will not be disturbed absent manifest error." Doucet v. Doug Ashy Bldg. Materials, Inc., 95-1159, p. 5, 6 (La.App. 3 Cir. 4/3/96); 671 So.2d 1148, 1152. We find no fault in this instruction. In Domingue v. State Department of Public Safety, 490 So.2d 772, 775 (La.App. 3 Cir. 1986), we stated that "[a]n initial tortfeasor will not be relieved of the consequences of his negligence unless the intervening cause superseded the original negligence and alone produced the injury." (Emphasis added.) Based on the record, we hold that the jury could have reasonably found the that the acts of Abbeville superseded any wrongs done by Breaux Electrical.
Plaintiffs next complain that the trial judge erred by giving the following instruction to the jury:
Any duty which a contractor owes to a third person injured by a defective condition in his construction stops after the passage of a reasonable amount of time after he has completed the construction and returned the control of the property to the owner. If you find a reasonable amount of time has passed since E.P. Breaux completed replacement of the utility pole and returned control of the pole and its attachments to the City of Abbeville, you must find in favor of E.P. Breaux.
This instruction is based on Hall v. Rapides Parish School Board., 491 So.2d 817 (La. App. 3 Cir.1986). In Hall, this court found that after a reasonable amount of time, the duty owed by a contractor would cease and it would become the duty of the owner to discharge any duty that may exist. We do not find error in this instruction. After a reasonable amount of time, the owner would be presumed to notice any deficiency and take care of that deficiency. Having found that this instruction is a correct statement of law which provides the jury with guidance to carry out its function, we hold that the jury could have reasonably concluded that the period of two and a half years that passed from the time the pole was installed to the time of the accident is a reasonable amount of time for the contractors duty to have ended.
The plaintiffs also complain that the following charge was highly prejudicial:
Because they are a contractor, E.P. Breaux cannot be found liable for plaintiffs' injuries due to its action in installation of the utility pole if the work E.P. Breaux did was done by them according to plans and specifications furnished to it by the City of Abbeville and any defect was due to any fault or insufficiency of the plan or specification. This rule applies regardless of whether any defect occurred or became evident before or after delivery of the work to the owner or prior to or after acceptance of the City.
Any plans and specificationsany plan and specification do not have to be in writing.
This instruction is based on La.R.S. 9:2771, which provides:
No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
The plaintiffs assert that "[t]he words `plans and specifications', in their ordinary sense and as terms of art, are used and understood, both by lay persons and designers and contractors, to mean written documents, usually drawings." However, plaintiffs presented no proof to support their position. In Winford Company Inc. v. Webster Gravel and Asphalt, Inc., 571 So.2d 802, 806 (La.App. 2 Cir.1990), the second circuit stated, "[i]t *492 would defeat the intent of LSA-R.S. 9:2771 to construe it as being available only in instances where plans and specifications have been reduced to a written instrument." We agree with this interpretation. Furthermore, we disagree with the plaintiffs' interpretation of our decision in Oxley v. Sabine River Authority, 94-1284 (La.App. 3 Cir. 10/19/95); 663 So.2d 497, as standing for the proposition that written plans are required. In Oxley, we found that the protection afforded by La.R.S. 9:2771 was not available to the contractor, J.D. Electric, because it was not contracted to perform the work complained of, and, as such, there were no plans and specifications.

Evidentiary Ruling
The plaintiffs claim that the trial judge made a "glaring and devastating" ruling when he failed to recognize Dr. Leonard Adams as an expert in the field of electrical engineering capable of "rendering opinions on the overhead electrical line system involved in this case." As a result of this denial, the plaintiffs sought supervisory writs from this court. We reversed the trial judge's decision regarding this issue and instructed the him to permit Dr. Adams to testify as an expert. When the plaintiffs sought to return Dr. Adams to the stand, they were concerned about the comments the trial judge made when initially disqualifying him as an expert. As a result, the plaintiffs asked the trial judge to instruct the jury to disregard the comments initially made. The trial judge decided not to make such a statement and instead instructed the jury that Dr. Adams will be accepted as an expert in the field of electrical engineering. The plaintiffs complain that the failure to give their requested curative statement tainted the testimony of Dr. Adams. We see no basis to this argument. Here, the trial judge told the jury that Dr. Adams would be accepted as an expert in the field of electrical engineering. We find that this was sufficient.

CITY OF ABBEVILLE
The trial judge found the City of Abbeville eighty-five percent at fault in causing the damages to the plaintiffs relying on the criteria of Soileau v. Southern Pacific Railroad, 640 So.2d 417 (La.App. 3 Cir.1994): (1) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; (2) the property which caused the damage was in the custody of the defendant; (3) defendant had actual or constructive notice of the risk; and (4) the defect in the property was the cause-in-fact of the injury. Based on the testimony presented at the trial, the trial judge stated the following:
Thus the court is persuaded that the city was charged with the knowledge that the guy wires' probable point of contact with the transmission line would energize the lines creating a condition which would create an unreasonable risk of harm, and a violation of the NESC [National Electric Safety Code] not withstanding, a simple removal of the guys which would have eliminated the risk was not effected.
Our review of the record leads us to the conclusion that the trial court was neither manifestly erroneous nor clearly wrong in this determination. There is a reasonable basis in the record for a determination that Abbeville was eighty-five percent at fault.

FAULT OF THE PLAINTIFFS
The jury attributed no comparative fault to the plaintiffs. When allocating fault, the following criteria should be considered: (1) whether conduct resulted from inadvertence or involved awareness of the dangers; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacity of the actors; and, (5) any extenuating circumstances which might require the actors to proceed in haste. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La. 1985).
Heath and Peggy arrived at the cemetery on Friday morning. The downed power lines were on the east side of the cemetery and they worked on the west side. Magee and Eric Moss arrived soon after the Griffins. Magee told Peggy that he was going to report the downed power lines Abbeville to make sure they were safe so the Griffins could clean the east side of the cemetery. *493 Magee returned and told the Griffins that the wires were dead and then proceeded to work around that fallen lines while the Griffins continued cleaning other areas of the cemetery. The following day, the Griffins began cleaning the area around the fallen wires. Heath later lifted the wires causing them to contact an energy source.
We find no manifest error in the jury's decision to find Heath and Peggy free from fault. Magee contacted the city and was told that the wires were safe. He then relayed this information to the Griffins. Furthermore, Heath and Peggy saw the Mosses working around the wires, further proof that the wires were indeed safe. Clearly, they were aware of the dangers. However, it is equally clear that they were lulled in to a false sense of security by the actions of Abbeville. As such, we can find no error in the jury's decision not to find fault on their behalf.
Having found no manifest error in the decisions by the jury and the trial judge, we are presented with a conflict which requires us to harmonize these varying decisions by adopting the more reasonable decision. We find that the jury's decision that Abbeville is solely at fault is the more reasonable of the two. We do this because Abbeville had knowledge that the lines were down and that people were working in the vicinity of them. The Griffins were very careful as evidenced by their waiting to work around the lines until they had been assured by Magee that he had spoken to Abbeville and was told that the lines were dead. As such, we find that the Griffins were acting in a reasonably prudent manner and that the City was not. Therefore, we find that Abbeville was solely responsible for this accident.

DAMAGES
In the case sub judice, the jury's and the trial judge's assessments of damages are in conflict. Therefore, we must reconcile them by examining the record to inquire which award of the damages is more reasonable. Hasha, 651 So.2d 865; Felice v. Valleylab, Inc., 520 So.2d 920 (La.App. 3 Cir.1987), writs denied, 522 So.2d 562, 563 (La.1988).
Heath suffered entry burns to his left hand and exit burns to both feet, chest, forearms, groin, anterior legs, and feet. He was hospitalized for forty-nine days and underwent four debridements and two skin grafts. He was in extreme pain throughout this treatment and was taking very large doses of Demerol. In addition, Heath suffered great pain every time bandages or the Silvadene cream was removed from his wounds. Dr. Darrell Henderson stated that burns can cause more pain than any other injury that a human can have. Heath also underwent eight months of physical therapy and has permanent scaring over much of his body. These scars range from mildly to markedly disfiguring. Markedly disfiguring was defined as visible from across a room. Dr. Stuart Phillips testified that Heath lost almost all of the peroneal muscle in his left leg. This corresponded to a one-fourth loss of the use of that leg. He also stated that Heath would have circulation problems with this leg as a result of the extensive damage done to the blood vessels. This would result in the leg painfully swelling from time to time.
Dr. Henderson testified that Heath would require further surgery on his left leg. He rated his disability without further surgery to be forty-five percent with a good chance that the leg would eventually have to be amputated. With surgery, Dr. Henderson surmised that the leg would not have to be amputated and the disability would be approximately thirty-five percent.
The record also reflects that Heath has suffered mental distress due to this accident. He has sought psychiatric and vocational counseling. He was diagnosed as suffering from post-traumatic stress disorder and has been taking Prozac since 1995.
Heath will be restricted to working indoors in a protected environment. He has a twenty-five percent disability rating due primarily to the circulatory problems with his left leg.
The record reflects that Peggy Griffin suffered second-degree burns to her left hand and both feet. She was hospitalized for several days and had trouble walking for several months. She is also limited to wearing *494 tennis shoes because of the pain in her feet. Additionally, she suffered an injury to her back as a result of being thrown in the air by the shock.
She has also suffered mentally due to witnessing the accident and recovery of her son and because of the guilt she feels for having ordered Heath to move the wires. She has been diagnosed as suffering from traumatic neuroses and post-traumatic stress disorder.
Larry Griffin was awarded damages under La.Civ.Code art. 2315.6. He arrived on the scene of the accident within minutes only to see Peggy lying on top of a tomb and Heath lying face down on a gravel road. He feared that they were dead. He took a month off from work to care for his family.
Ryan Hardy received a severe shock when he pulled Heath off of the live wire. He testified that he had tingling sensation that lasted for approximately twenty minutes. He was also distressed to see this accident occur to Peggy and Heath and suffered from nightmares for over a year.
Leo Hardy was awarded loss of consortium damages by the jury. He testified that for a year after the accident, Ryan was plagued with nightmares and sleeplessness which had a deleterious effect on their relationship.
After considering these damages, the jury and the trial judge made the following awards:

Jury Trial Judge
Heath Griffin
Past Medical $ 76,000.00 General Damages $500,000.00
Future Medical $ 200,000.00 Past Medical $ 75,000.00
Past Lost Income/Capacity $ 45,000.00 Future Medical $ 28,000.00
Past Physical & Mental Pain $ 150,000.00 Future Lost Income/Capacity $ 85,000.00
& Suffering
Future Physical & Mental $ 50,000.00
Pain & Suffering
Past Physical Disability, Disfigurement $ 250,000.00
& Loss of Enjoyment
of Life
Future Physical Disability, $ 50,000.00 Total $688,000.00
Disfigurement & Loss of Enjoyment
of Life
TOTAL $1,071,000.00 Total Reduced by 10% $619,200.00
Peggy Griffin
Past Medical $ 8,000.00 General Damages $ 60,000.00
Future Medical $ 10,000.00 Past Medical $ 8,000.00
Past Physical & Mental Pain $ 100,000.00
& Suffering
Future Physical & Mental $ 25,000.00 Total $ 68,000.00
Pain & Suffering
TOTAL $ 143,000.00 Total Reduced by 5% $ 64,600.00
Larry Griffin

*495
Loss of Consortium, Past and $ 10,000.00 Loss of Consortium with Wife $ 2,500.00
Future, from Wife Peggy Peggy
Loss of Consortium, Past and $ 7,500.00 Loss of Consortium with Son $ 2,500.00
Future, from Son Heath Heath
Mental Pain and Suffering-LeJeune $ 50,000.00 Total $ 5,000.00
LeJeune
TOTAL $ 67,500.00 Total Reduced by 15% $ 4,250.00
Ryan Hardy
Damages $ 15,000.00 Damages $ 8,000.00
Leo Hardy
Damages $ 5,000.00 Damages -0-

After careful consideration of the record before us and the extent of the damages, we find that the award of damages made by the jury is the more reasonable of the two.

LOSS OF CONSORTIUM
The plaintiffs further allege that the trial court erred by leaving the loss of consortium claims of Peggy, Kile, and Heath Griffin and Peggy Hardy off of the jury verdict form.
Loss of consortium is more than just a loss of general overall happiness, it also includes love and affection, society and companionship, sexual relations, the right of performance of material services, the right of support, aid, and assistance, and felicity. Detraz [v. Hartford Accident & Indem. Co.], 647 So.2d 576. The trier of fact is given much discretion in awards for loss of consortium and will not be overturned on appeal in the absence of manifest error. Doucet v. Doug Ashy Bldg. Materials, Inc., 95-1159 (La.App. 3 Cir. 4/3/96); 671 So.2d 1148; Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3 Cir.1986).
Bellard v. South Cent. Bell Telephone Co., 96-1426, p. 21 (La.App. 3 Cir. 8/27/97); 702 So.2d 695, 707. Initially, a review of the testimony of these parties reveals that there was little or no evidence presented at trial regarding these claims. Therefore, if there was error in omitting their names from the jury verdict form, we find that it was harmless. Finally, the record shows that with the exception of Peggy Hardy, there were no contemporaneous objections to these omissions from the verdict form. Therefore, the plaintiffs waived their right to appeal the omissions of Peggy, Kile, and Heath Griffin's loss of consortium claims.

CONCLUSION
For the reasons assigned, the decision of the jury finding the City of Abbeville solely at fault is affirmed. The decision of the trial judge finding the City of Abbeville eighty-five percent at fault, Heath Griffin ten percent at fault, and Peggy Griffin five percent at fault is reversed. We harmonize the jury's and the trial judge's award of damages, finding the jury's award more reasonably compensates the plaintiffs for their injuries. The City of Abbeville is given credit for its payment of $914,195.83 on April 23, 1997, which included legal interest to the date of payment. Legal interest continues to accrue on the remainder of the judgment until paid. Costs of this appeal are assessed to the defendant-appellee, the City of Abbeville.

ORDER
The Application for Rehearing herein having been duly considered:
*496 IT IS ORDERED that a Rehearing Be, and the same is hereby, DENIED, AS MOOT. SEE JOINT MOTION TO DISMISS PLAINTIFFS' ACTIONS AS TO CERTAIN DEFENDANTS, NAMELY THE CITY OF ABBEVILLE AND INTERNATIONAL INSURANCE COMPANY, BUT RESERVING PLAINTIFFS' ACTION AGAINST THE REMAINING DEFENDANTS, AND DENYING, AS MOOT, PLAINTIFFS' APPLICATION FOR REHEARING.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] La.R.S. 13:5105 provides that "No suit against the state or a state agency or a political subdivision shall be tried by jury."