**BRETT LIRETTE**      *      **NO. 2023-CA-0377**

**VERSUS**      *

    **COURT OF APPEAL**

**JASON C. ADAMS, STATE**      *
**FARM MUTUAL**      **FOURTH CIRCUIT**
**AUTOMOBILE INSURANCE**      *
**COMPANY, GEICO**      **STATE OF LOUISIANA**
**CASUALTY COMPANY &**      * * * * * * *
**AXIS VENTURES, LLC**

**CONSOLIDATED WITH:**      **CONSOLIDATED WITH:**

**BRETT LIRETTE**      **NO. 2023-CA-0382**

**VERSUS**

**JASON C. ADAMS, STATE FARM**
**MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, GEICO**
**CASUALTY COMPANY & AXIS**
**VENTURES, L.L.C.**

**CONSOLIDATED WITH:**      **CONSOLIDATED WITH:**

**BRETT LIRETTE**      **NO. 2023-CA-0528**

**VERSUS**

**JASON C. ADAMS, STATE FARM**
**MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, GEICO**
**CASUALTY COMPANY & AXIS**
**VENTURES, LLC**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-05383, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Paula A. Brown, Judge Nakisha
Ervin-Knott)

Steven A. DeBosier
James Hilton Peltier, Jr.
Adras Paul LaBorde III
DUDLEY DEBOSIER INJURY LAWYERS
1075 Government Street
Baton Rouge, LA 70802


COUNSEL FOR PLAINTIFF/APPELLANT


Gordon P. Guthrie, III
PORTEOUS, HAINKEL & JOHNSON, LLP
704 Carondelet Street
New Oleans, LA 70130


Jeffrey Edward Richardson
ADAMS AND REESE LLP
701 Poydras Street
Suite 4500
New Orleans, LA 70139


COUNSEL FOR DEFENDANT/APPELLEE


**AFFIRMED**

**JULY 10, 2024**

This is a civil action. The underlying suit for wrongful death and survival damages emanates from a single-car accident, in which the driver, Jason C. Adams ("Mr. Adams"), was excessively speeding while intoxicated, and in which the passenger, Kristi Lirette, was lamentably killed. That suit gave rise to five appeals now pending before this Court. Plaintiffs Brett Lirette and Diana King, the parents of Kristi Lirette (the "Parents"), filed three separate appeals that were later consolidated with two separate appeals filed by the defendant, Mr. Adams.[1] After consideration, this Court deconsolidated the Parents' appeals from Mr. Adams'; therefore, this opinion will address only the Parents' requests for review, while the concerns raised by Mr. Adams will be examined in a separate opinion.[2]

The issues presented in the Parents' appeals are as follows:

**Case No. 2023-CA-0377**: This appeal seeks review of the district court's June 16, 2022 judgment, which granted State Farm Mutual Automobile Insurance Company's ("State Farm") motion for summary judgment and dismissed with prejudice State Farm as a liability insurer under State Farm Policy Number 282-7788-D17-18B;

---

[1] The Parents' appeals were lodged with this Court under Case Nos. 2023-CA-0377, 2023-CA-0382 and 2023-CA-0528; Mr. Adams' appeals were lodged with this Court under Case Nos. 2023-CA-0527 and 2023-CA-0546.

[2] We will, however, utilize the entire record in all five appeals to reach our conclusions in each opinion. We will also consider the record found in the prior appeal in this case, 2022-CA-0552 c/w 2022-CA-0553, pursuant to Uniform Rules—Courts of Appeal, 2-1.14.

**Case No. 2023-CA-0382**: This appeal seeks review of the district court's February 23, 2023 judgment, which granted State Farm's motion to deposit funds into the registry of the court and to assess costs and declared that State Farm's liability for legal interest would cease to run from the day it deposited the policy limits of State Farm Policy Number 286-8850-F23-18A into the registry of the court; and

**Case No. 2023-CA-0528**: This appeal seeks review of the issues addressed by both the June 16, 2022 and February 23, 2023 judgments as ultimately rendered in the district court's February 27, 2023 judgment.

State Farm has filed motions to dismiss the Parents' appeals in Case Nos. 2023-CA-0377 and 2023-CA-0528 for lack of appellate jurisdiction. For the reasons that follow, we grant State Farm's motion to dismiss the appeal in Case No. 2023-CA-0377 for lack of jurisdiction; we deny State Farm's motion to dismiss the appeal in Case No. 2023-CA-0528; we dismiss the appeal in Case No. 2023-CA-0382 for lack of jurisdiction; we affirm the district court's February 27, 2023 judgment only to the extent that it incorporates and finalizes the June 16, 2022 judgment, which dismissed with prejudice State Farm as a liability insurer under State Farm Policy Number 282-7788-D17-18B[3] and the February 23, 2023 judgment, which granted State Farm's motion to deposit funds into the registry of the court and limited the accrual of judicial interest.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In a prior opinion regarding the same parties, this Court in *Lirette v. Adams* ("*Lirette I*") laid out many of the same facts which are pertinent to our review in the case *sub judice*. 22-0552 (La. App. 4 Cir. 1/31/23), 382 So.3d 122. "On May 4, 2016, Kristi Lirette was a passenger in a [black] 2015 Lamborghini Huracan

---

[3] This judgment also granted summary judgment in favor of defendant GEICO Casualty Company, dismissing all claims against it with prejudice.

2

driven by Mr. Adams." *Id.*, 22-0552 at p. 2, 382 So.3d at 125. "The vehicle collided with a flood wall on Tchoupitoulas Street in New Orleans, and Kristi Lirette died from the injuries she sustained in the accident." *Id.*

"At the time of the subject accident, Mr. Adams and his business partner, Dr. Alireza Sadeghi ("Dr. Sadeghi"), each leased a [black] 2015 Lamborghini Huracan [together] with their business, Axis Ventures, LLC ("Axis"). *Id.* "Only after the accident did Mr. Adams realize that he was inadvertently driving the vehicle leased to Dr. Sadeghi and Axis ("Lamborghini [A]"), and not the vehicle leased to him and Axis ("Lamborghini [B]")." *Id.*

Brett Lirette filed a petition for damages on May 27, 2016, in which he named Mr. Adams, GEICO Casualty Company ("GEICO"), State Farm, and Axis as defendants.[4] Germane to our review, "Mr. Lirette [alleged] that two insurance policies issued by State Farm were in full force and effect at the time of the subject accident and rendered State Farm jointly and solidarily liable for the damages caused by Mr. Adams." *Id.* These two policies were: State Farm Policy Number 286-8850-F23-18A ("State Farm Policy A"), with named insureds Dr. Sadeghi and Axis for the use of Lamborghini A; and State Farm Policy Number 282-7788-D17-18B ("State Farm Policy B"), with named insureds Mr. Adams and Axis for the use of Lamborghini B.

After answering the petition and conducting some limited discovery, State Farm filed a motion for summary judgment on October 26, 2017, seeking to be dismissed as liability insurer for Mr. Adams' collision under State Farm Policy B. The matter came for hearing on December 15, 2017, at which time the district

---

[4] Brett Lirette was the only named plaintiff in the original petition. He filed a first supplemental and amending petition on January 13, 2017, to add Diana King as a plaintiff in her capacity as mother and an heir of Kristi Lirette.

3

court decided to allow additional discovery before ruling on the motion. Sometime later, on January 5, 2022, State Farm filed a motion to re-urge its previously filed motion for summary judgment. Another hearing was conducted for this and several other pending motions on April, 1, 2022. The district court issued its judgment on June 16, 2022, dismissing with prejudice any of the Parents' claims pertaining to State Farm's liability for Mr. Adams' accident under State Farm Policy B. State Farm conceded that there was coverage for the accident under State Farm Policy A.

The Parents' suit for damages came for jury trial on October 31, 2022, and concluded on November 7, 2022, with a jury verdict in favor of the Parents and against Mr. Adams and State Farm. After voir dire but before the beginning of trial, the district court held a hearing on various motions in limine. Among those heard was a motion that had been filed by State Farm to deposit funds into the registry of the court and to assess costs. State Farm asserted that there were provisions in the insurance policy it had issued to Mr. Adams that would halt the accrual of judicial interest at such time as it placed an amount equal to the policy limits into the registry of the court, which, in this case, was $250,000.00. After hearing the arguments of counsel for both parties, the court ruled that it would allow State Farm to deposit funds into the registry of the court, but would not render any decision limiting interest or costs at that time.

State Farm filed a motion on December 1, 2022, for leave of court to file a supplemental memorandum in support of its motion to deposit funds into the registry of the court. Following, the district court held a second hearing on State Farm's motion on January 11, 2023. A little over a month later, on February 23, 2023, the district court issued a judgment that granted State Farm's motion to

4

deposit funds into the registry of the court and declared that State Farm's "liability for legal interest on its policy limits ceased to run on the date it deposits/deposited policy limits into the registry of the court." Just four days later, the district court rendered a trial judgment on February 27, 2023, in which it adopted the jury's November 7, 2022 verdict, and cast Mr. Adams in judgment for $51,000,000.00. The decree also cast State Farm in judgment "in the amount of $250,000.00, the limits of the liability policy in effect at the time of the automobile accident of May 4, 2016 (policy no. 286 885O-F23-18A), plus judicial interest on the $250,000.00 limits from the date of judicial demand, May 27, 2016, through November 7, 2022, the date of deposit of those funds with the Clerk of Civil District Court for the Parish of Orleans."[5]

The Parents now seek review of the district court's June 16, 2022 judgment, which granted State Farm's motion for summary judgment and dismissed with prejudice State Farm as a liability insurer under State Farm Policy B; the district court's February 23, 2023 judgment, which granted State Farm's motion to deposit funds into the registry of the court and limited State Farm's liability for legal interest to run from the day of judicial demand until it deposited the policy limits of State Farm Policy Number A into the registry of the court; and the district court's February 27, 2023 judgment, insofar as it incorporated its June 16, 2022 and February 23, 2023 judgments.

Before considering the merits of any of the issues now before us, we note that "[a]n appellate court has a duty to determine—regardless whether the parties raise the issue—whether it has jurisdiction to consider an appeal." *Chenet v.*

_____

[5] Implicit in the decree is a confirmation of the February 16, 2022 judgment, finding that State Farm had no liability for the accident under State Farm Policy B.

*Colgate-Palmolive Co.*, 22-0666, p. 4 (La. App. 4 Cir. 2/1/23), 357 So.3d 479, 484 (citing *Schwarzenberger v. La. State Univ. Health Scis. Ctr.-New Orleans*, 18-0812, p. 2 (La. App. 4 Cir. 1/9/19), 263 So.3d 449, 451-52). We begin by examining the two motions filed by State Farm to dismiss appeal for lack of appellate jurisdiction.

***Motion to Dismiss Case No. 2023-CA-0377***

As we noted above, this appeal seeks review of the district court's June 16, 2022 judgment, which granted State Farm's motion for summary judgment and dismissed with prejudice State Farm as a liability insurer under State Farm Policy B. State Farm argues that the June 16, 2022 judgment is interlocutory in nature and, therefore, not a final appealable judgment. Additionally, State Farm points out that this issue was previously decided by this Court in *Lirette I*. For those reasons, State Farm posits that the only appeal filed by the Parents properly before us is the appeal that was filed on June 15, 2023, which was lodged with this Court as Case No. 2023-CA-0528. We agree.

In *Lirette I*, this Court reasoned "that if a judgment only partially determines the merits of an action, then it constitutes a partial judgment and is immediately appealable only if authorized by La. C.C.P. art. 1915." *Lirette I*, 22-0552 at p. 11, 382 So.3d at 130 (quoting *Cent. Bldg. Servs., LLC v. St. Augustine High Sch., Inc.*, 18-0427, p. 2 (La. App. 4 Cir. 10/17/18), 258 So.3d 103, 105).

> [La. C.C.P. art. 1915] divides partial judgments into two groups: (1) those under Article 1915(A), which lists six specific types of partial final judgments that are appealable without being designated as final by the trial court;[6] and (2) those covered by Art. 1915(B), which

---

[6] Louisiana Code of Civil Procedure Article 1915(A) provides:

provides that any other partial judgment (excluding those listed in Part A) is not deemed to be final, and not subject to appeal, unless the trial court designates it as such.

*Id.* 22-0552 at pp. 11-12, 382 So.3d at 130. "In relevant part, '[p]aragraph (3) under La. C.C.P. art. 1915(A) includes summary judgments as one of the types of judgments that are immediately appealable without being designated as final, unless the summary judgment is granted pursuant to La. C.C.P. art. 966(E).'" *Id.* (quoting *Cent. Bldg. Servs.*, 18-0427 at p. 3, 258 So.3d at 105).

Louisiana Code of Civil Procedure Article 966(E) instructs that "[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties." We explained this to mean that "if a partial summary judgment is granted on a particular issue or cause of action but does not dispose of the entire case as to that party, then La. C.C.P. art. 1915(A)(3) does not apply." *Lirette I*, 22-0552 at pp. 12-13, 382 So.3d at 131. Even more to the point, this Court has

---

A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:

(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.

(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.

(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).

(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.

(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.

(6) Imposes sanctions or disciplinary action pursuant to Article 191, 863, or 864 or Code of Evidence Article 510(G).

7

previously had occasion to expound that "a partial summary judgment declaring that a policy provides coverage for a particular claim is not final and, therefore, review is by writ application." *Milano v. Board of Com'rs of Orleans Levee Dist.*, 96-1168, p. 2 (La. App. 4 Cir. 6/12/96), 676 So.2d 195, 196. Because the appeal of the June 16, 2022 judgment has again been filed separately, we find that we are confronted with a very similar scenario to that which was before this Court in *Lirette I*. Thus, following this Court's reasoning in *Lirette I*, this judgment, on its own, is interlocutory in nature and not a final, appealable judgment.

Nonetheless, we recognize that "[w]hen, as here, a non-appealable judgment is appealed, this [C]ourt has the discretion to convert the appeal to an application for supervisory writ." *Emery v. Ben*, 23-0063, p. 7 (La. App. 4 Cir. 9/28/23), 373 So.3d 112, 117-18 (quoting *Chenet*, 22-0666, p. 19, 357 So.3d at 492.). There is a long line of jurisprudence, however, that only allows for such a conversion when each of two specific circumstances are met: (1) the motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal; and (2) when the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation. *Id.* at pp. 7-8, 373 So.3d at 118 (first citing *Reed v. 21st Century Centennial Ins. Co.*, 18-1071, p. 2 (La. App. 4 Cir. 4/17/19), 268 So.3d 1273, 1275; then citing *Petkovich v. Franklin Homes, Inc.*, 21-0448, p. 21 (La. App. 4 Cir. 9/22/22), 349 So.3d 1042, 1058).

In this instance, the notice of signing of judgment is dated June 16, 2022, while the notice of intent to devolutively appeal that judgment was filed on April

8

24, 2023, well beyond the thirty-day time limit to file a supervisory writ application with this Court. Because our jurisprudence dictates that both circumstances must be met in order to convert an unappealable judgment into an application for supervisory review, "the failure to satisfy the first leaves us without any authority to exercise our discretion or jurisdiction." *Id.* at p. 8, 373 So.3d at 118. Therefore, State Farm's motion to dismiss the appeal in Case No. 2023-CA-0377 is granted.

### *Motion to Dismiss Case No. 2023-CA-0528*

In this motion to dismiss, State Farm has changed its tack. Rather than continuing with its assertion that Case No. 2023-CA-0528 is the only case properly before this Court, State Farm now asserts that one of the judgments included in that appeal, specifically the February 27, 2023 judgment, is duplicative of the appeal found in Case No. 2023-CA-0382. State Farm argues that because the order of appeal in Case No. 2023-CA-0382 was granted prior to the granting of the order of appeal in 2023-CA-0528, the district court was divested of its jurisdiction to grant a second appeal; as such, Case No. 2023-CA-0382 is the only proper appeal for this Court to consider. We disagree.

Our review of the February 23, 2023 judgment in Case No. 2023-CA-0382 leads us to conclude that the judgment is interlocutory in nature and, therefore, not a final appealable judgment. "It is well-settled that judgments in Louisiana are 'either interlocutory or final.'" *Washington v. Taylor*, 21-0080, p. 8 (La. App. 4 Cir. 1/26/22), 334 So.3d 1060, 1068 (quoting *Jacobs v. Metzler-Brenckle*, 20-0585, 20-0607, p. 12 (La. App. 4 Cir. 5/26/21), 322 So.3d 347, 356). "The distinction between interlocutory judgments and final judgments is that a final judgment determines the merits of an action in whole or in part, while an interlocutory

9

judgment decides only preliminary matters in the course of the action." *Jacobs*, 20-0585, 20-0607, p. 12, 322 So.3d at 356.

In *Pesson v. Dieterich*, which we find to be instructive for the question before us, the appellate court found that a motion and order to deposit funds into the registry of the court that was filed and ruled upon prior to the rendition of a final judgment was an interlocutory judgment. 14-252 (La. App. 3 Cir. 6/4/14), 140 So.3d 901. That court reasoned that depositing the funds with the court was simply meant to preserve them and did not decide the merits of the whether the funds were actually owed, to whom they might be owed or in what amount that might be. *Id*. at p. 3, 140 So.3d at 903-4. Applying that rationale to the facts before us, we find that Case No. 2023-CA-0382 does not present a proper appeal to this Court because the ruling at issue was rendered four days before the final trial judgment, which was issued on February 27, 2023. Instead, the Parents' application to this Court should have been filed as an application for supervisory review by way of a writ.

In addition, we find that this Court lacks discretion to convert this appeal into a writ application. In the instant matter, the notice of signing of judgment is dated February 23, 2023, while the Parents did not file their motion for devolutive appeal until forty days later on April 4, 2023. Consequently, this filing is untimely for consideration as an application for supervisory review. As a result, for the same reason we found dismissal is proper in Case No. 2023-CA-0377, we *sua sponte* dismiss the appeal in Case No. 2023-CA-0382 for lack of jurisdiction.

Lastly, we find that the trial judgment—which is the basis for the appeal in Case No. 2023-CA-0528—is a final, appealable judgment; therefore, State Farm's

10

motion to dismiss this appeal is denied. Accordingly, the following discussion will be confined to the appeal lodged as Case No. 2023-CA-0528.

## DISCUSSION

In this appeal, the Parents present two main issues encompassing multiple assignments of error. We summarize the two issues as follows: (1) The district court incorrectly granted State Farm's motion for summary judgment and dismissed it as a liability insurer under State Farm Policy B, holding that "the two policies cannot be stacked" because stacking is inapplicable to these policies; and (2) the district court incorrectly held that the accrual of judicial interest owed by State Farm was halted when State Farm placed funds into the registry of the court. Before addressing the issues raised by the Parents, we will set forth the applicable standard of review.

*Standard of Review*

This Court has frequently and consistently recited that "[i]t is well-settled law that '[t]his Court reviews the granting of '[a] summary judgment on appeal *de novo*, using the same criteria that govern the [district] court's determination of whether summary judgment is appropriate.'" *Breston v. DH Catering, LLC*, 23-0460, p. 12 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 961 (alterations in original) (quoting *Williams v. Infirmary*, 23-0180, p. 6 (La. App. 4 Cir. 12/20/23), 382 So.3d 345, 351). "Generally, on a motion for summary judgment, the burden of proof remains with the mover." *Id.* at pp. 12-13, 384 So.3d at ____. "But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his

11

evidentiary burden of proof at trial." *Id.* "However, if the opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted." *Id.*

Additionally, this Court has previously clarified that "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *Wagner v. Tammany Holding Co., LLC*, 13-0374, p. 8 (La. App. 4 Cir. 10/9/13), 135 So.3d 77, 82 (quoting *Orleans Parish School Bd. v. Lexington Ins. Co.*, 12–1686, p. 10 (La. App. 4 Cir. 6/5/13), 118 So.3d 1203, 1212). And further, "The interpretation of the language of a contract is a question of law subject to the *de novo* standard of review on appeal." *1955 Nola Holdings, L.L.C., v. Windy Hill Pictures L.L.C.*, 23-0050, p. 12 (La. App. 4 Cir. 10/2/23), 376 So.3d 200, 209 (quoting *TKTMJ, Inc. v. Sewerage and Water Bd. of New Orleans*, 20-0154, p. 5 (La. App. 4 Cir. 12/16/20), 366 So.3d 276, 283).

***Motion for summary judgment***

As noted elsewhere in this opinion, on January 5, 2022, State Farm filed a re-urged motion for summary judgment, seeking to be dismissed as a liability insurer under State Farm Policy B, which the district court granted on June 16, 2022. In its reasons for judgment, the district court found the "*If Other Liability Coverage Applies*" provision of the policy to be dispositive of State Farm's motion for summary judgment.[7] This pertinent State Farm policy provision provides:

If Other Liability Coverage Applies:

---

[7] In its motion for summary judgment and in its brief to this Court, State Farm raises the issue of whether Lamborghini A qualified as a "non-owned" vehicle under a different policy provision in State Farm Policy B. However, because the Parents have not raised that issue in this appeal, we pretermit any discussion of the argument.

1) If Liability Coverage provided by this policy and one or more other Car Policies issued to you or any resident relative by the State Farm Companies apply to the same accident, then:

> a) The Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

> b) The maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

The district court reasoned that the "you" found in section 1 of this provision includes Axis in its definition. Because Mr. Adams was a managing member of Axis and Axis was a named insured on both policies, coverage was extended to him under either policy. As Axis was a named insured on both State Farm Policies A and B, section 1(a) of the Other Liability Coverage provision precluded Mr. Adams from adding the policy limits together to provide coverage for the claims against him.

The Parents make four separate arguments to this Court, challenging the district court's ruling. We will examine each in turn.

*Argument No. 1*

The Parents contend that the district court erred when it interpreted "you" to apply to Axis. Instead, according to the Parents, Louisiana jurisprudence only prohibits the stacking of insurance policies when the same individual is named on multiple policies, but that Axis did not qualify as an individual because it is a business entity. In support of this position, the Parents rely on *Cooks v. Rental Serv. Corp.*, wherein the appellate court, discussing a Supreme Court decision, reiterated: "In *Boullt v. State Farm Mutual Automobile Insurance Co.*, the Louisiana Supreme Court explained that in order for the issue of stacking to arise at all, 'the individual seeking to stack coverages must in fact be an insured as to the

13

particular loss under more than one policy or a single policy covering multiple vehicles.'" 04-1646, p. 3 (La. App. 3 Cir. 4/27/05), 900 So. 2d 1146, 1148 (quoting *Boultt v. State Farm Mutual Automobile Insurance Co.*, 99-0942, p. 7 (La. 10/19/99), 752 So.2d 739, 743). The Parents then cited a U.S. Supreme Court Case[8] to further extrapolate that "individual," as used in *Boullt,* is synonymous with "human being" or "person." Using this syllogism, the Parents urge this Court to find that Axis, as a business entity, does not qualify as an individual; therefore, they argue, stacking is inapplicable and Mr. Adams should be afforded coverage under both policies.

In response, State Farm argues that the *Boullt* Court's use of the word "individual" was sheer happenstance and holds no special significance or definitional import for that case. State Farm posits that *Boullt* is distinguishable from the case *sub judice* because the *Boullt* Court was examining anti-stacking language in an uninsured motorist ("UM") statute, whereas, in the instant matter, the district court was interpreting policy language. Further, State Farm points out that the statute examined by the *Boullt* Court did not include the word "individual;" rather, it referenced "the insured." We find State Farm's reasoning to be more persuasive.

In *Rolston v. United Servs. Auto. Ass'n*, this Court highlighted the Louisiana Supreme Court's directive regarding the interpretation of language in an insurance contract. 06-0978 (La. App. 4 Cir. 12/13/06), 948 So.2d 1113. "Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning." *Id.* at p. 5, 948 So.2d at 1117

---

[8] *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454, 132 S.Ct. 1702, 1706, 182 L.Ed. 2d 720 (2012).

(quoting *Peterson v. Schimek*, 98-1712, p. 5 (La. 3/2/99), 729 So.2d 1024, 1028-29; *see also* La. C.C. art. 2047). "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Id.* "An insurance contract . . . should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge . . . its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id.*

In the *case sub judice*, our review of the of the State Farm policies at issue reveals that the definitions contained in the State Farm Policy Booklet ("the Booklet") are clear and unequivocal. First, the Booklet provides that "***Person*** means a human being." Next, the Booklet explains that "***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page." It then becomes quite clear in the very next sentence that "you" is not necessarily a human being when it qualifies that "[i]f a named insured shown on the Declarations Page is a ***person***, then "***you***" or "***your***" includes the spouse of the first ***person*** shown as a named insured."

Thus, we conclude that "you" has a clearly defined and unambiguous meaning in the Booklet, and to construe "you" to mean "human being" would be an unreasonable and strained interpretation for which we have no authority. This is especially true in light of the fact that the Booklet defines "person" to mean "human being." This argument is without merit.

15

*Argument No. 2*

Here, the Parents re-urge this Court to consider that "you" should be defined as "individual" and that the Supreme Court requires that an individual be listed on multiple policies. As we just discussed, we find this approach to be a perversion of the explicit language found within the Booklet; therefore, this interpretation is not well founded. Alternatively, the Parents argue that "you" should be read to apply conjunctively to both of the named insureds on each individual policy. State Farm points out that, consistent with the Booklet definition, "you" or "your" is defined to encompass either "the named insured or named insureds," which is disjunctive. Nevertheless, following this rationale, the Parents assert that because both of the named insureds are not identical in State Farm Policies A and B, the anti-stacking statute does not apply. This argument is misplaced. It is clear from the record that the district court based its ruling solely on its interpretation of the policy language contained in the Other Liability Coverage provision, not on any statutory law.

*Argument No. 3*

This argument is markedly similar to the Parents' previous argument. This time, however, the Parents reference what is commonly known as the "anti-stacking" statute, La. R.S. 22:1295(1)(c).[9] Specifically, the Parents cite to the

---

[9] Louisiana Revised Statutes 22:1295(1)(c) provides:

> (c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subparagraph (1)(a) of this Section, then such limits of liability shall not be increased because of multiple motor vehicles covered under such policy of insurance, and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; however, with respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, and the following priorities of recovery under uninsured motorist coverage shall apply:

16

district court's reasons for judgment, wherein it found that "the two policies cannot be stacked," arguing that La. R.S. 22:1295 only applied to UM coverage, which is not at issue here. There are two flaws in this argument. First, we would note that the term "stacking" appears nowhere in the "anti-stacking" statute, it is simply a colloquial term of art meaning that coverages cannot be combined in certain delineated circumstances. We find the district court's use of the word was nothing more than shorthand to convey that, under State Farm's Other Liability Coverage provision, if "you" as a named insured are covered under more than one liability policy, then you may not recover on each of those policies for claims arising from the same accident. Second, while the Parents are correct that La. R.S. 22:1295 is limited to circumstances involving UM coverage, it is of no moment—State Farm did not use the statute as a basis for its arguments, and the district court did not utilize the statute in formulating its conclusions. This argument is without merit.

*Argument No. 4*

Finally, the Parents assert that in keeping with Louisiana jurisprudence, the anti-stacking statute only applies when a named insured under the policies is seeking to cumulate coverage. As a result, the Parents argue that they should not be precluded from asserting claims against both State Farm Policies A and B because they are not named insureds on either policy. This argument is equally problematic. The jurisprudence cited by the Parents relates to the interpretation of

---

(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary.

(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.

different iterations of the anti-stacking statute in the context of UM coverage.[10] However, as the Parents have previously admitted in a prior argument, UM coverage is not at issue here, rendering the statute inapplicable to the facts of this case. This argument is without merit.

### *Accrual of judicial interest*

For this issue—whether the district court erred in allowing State Farm to deposit money into the registry of the court and arrest the accrual of judicial interest at that time—the Parents present three separate arguments. Because the first two arguments are intertwined, we will consider them together.

*Arguments No. 1 & 2*

On August 16, 2022, State Farm filed a motion to deposit funds into the registry of the court and motion to assess costs in its capacity as liability insurer under State Farm Policy A. Attached to that motion was the sworn affidavit of Melissa Shim ("Ms. Shim"), an employee of State Farm. The Parents rely on Ms. Shim's averment that the applicable policy provisions for State Farm Policy A were "covered under State Farm Car Policy Booklet - Louisiana Policy Form 9818A." Located in the section of the Booklet entitled Supplementary Payments, the following language was included:

> ***We*** will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above, the interest, premiums, costs, and expenses listed below that result from such accident:
>
> 1. Interest on damages owed by the ***insured*** that accrues:
>
> a. before a judgment, where owed by the law, but only on that part of the judgment we pay; and

---

[10] Prior to 2003, the anti-stacking statute was found at La. R.S. 22:1406(D) when it was redesignated as La. R.S. 22:680 by Acts 2003, No. 456, § 3. The statute was then renumbered to its current location, 22:1295(1)(c), by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009.

b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the ***insured*** or ***us.***

*We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's **Liability Coverage**.

This language, the Parents insist, unambiguously created a contractual obligation for State Farm to pay both pre and post-judgment judicial interest owed by an insured or State Farm regardless of when funds are placed into the registry of the court.

State Farm offers the Louisiana Supreme Court case of *Martin v. Champion Ins. Co.*, for the proposition that when there is a judgment in excess of the policy limits, the amount of interest that an insurer owes is determined by the language of the "supplemental payment provisions contained in the insurance contract." 95-0030, p. 6 (La. 6/30/95), 656 So.2d 991, 995. In further support, State Farm also cites to and distinguishes *Burnett v. Lewis* and *LeBlanc v. Aysenne*. *Burnett*, 02-0020, p. 20 (La. App. 4 Cir. 7/9/03), 852 So.2d 519, 533-34 (wherein this Court found that the supplemental provision of an insurance policy was controlling when the judgment was in excess of the policy limits); *LeBlanc*, 05-0297, p. 9 (La. 1/19/06), 921 So.2d 85, 93 (wherein the Supreme Court held that in the face of a judgment in excess of the policy limits, "the clear and explicit terms of [the insurer's] policy requires [the insurer] to pay interest, pursuant to its supplemental payment provision, on its policy limit . . . from the date of judicial demand until paid.") State Farm asserts that the correct supplemental payments provision which is controlling in this case is not the one relied upon by the Parents, but is the one contained in an Amendatory Endorsement to the policy, which provides, in pertinent part:

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's **Liability Coverage**:

  a. before a judgment, but only the interest on the lesser of:

    (1) that part of the damages *we* pay; or

    (2) this policy's applicable **Liability Coverage** limit; and

  b. after a judgment.

  *We* have no duty to pay interest that accrues after we deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's **Liability Coverage**. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

The district court agreed with State Farm and based its ruling on the supplemental payments provision from the Amendatory Endorsement. We, too, agree with State Farm.

In its reasons for judgment, the district court acknowledged that State Farm, in its August 16, 2022 motion to deposit funds, relied upon the same supplemental provision the Parents now espouse. However, on December 1, 2022, the court allowed State Farm to file a supplemental memorandum in support of its motion to deposit funds. In that pleading, State Farm explained that after a further examination of the policy, it found that the supplemental payments provision contained within the Booklet was superseded by the Amendatory Endorsement.

The Parents argue that the district court erred in considering the Amendatory Endorsement because it is unclear whether it was a part of the policy at the time of loss. Alternatively, the Parents contend that even if the Amendatory Endorsement was in effect at the time of loss, the differences between the two supplemental provisions is negligible. Further, they maintain that because State Farm initially argued that the supplemental provision in the Booklet was clear and unequivocal,

20

by changing its position to now cite to the Amendatory Endorsement, State Farm is conceding that the provision is susceptible to more than one interpretation and, thus, ambiguous.

The district court noted that, on January 5, 2022, when State Farm filed a motion to re-urge its previously filed motion for summary judgment, it attached a copy of portions of State Farm Policy A that contained the Amendatory Endorsement. This copy of the policy included a document styled Certified Policy Record that was signed by Underwriter, Jeffrey Kressner ("Mr. Kressner"). Mr. Kressner certified that he was the custodian of records for policies issued by State Farm and that these documents accurately reflected the policy that was in force on the date of loss. Therefore, the court found, the Parents knew or should have known by January 5, 2022, that the Amendatory Endorsement was included in the policy. We agree.

First, we find State Farm's reliance on *Martin*, *LeBlanc*, and *Burnett* to be well founded. Applying the reasoning of this jurisprudence to the matter before us, because the judgment rendered against Mr. Adams in the amount of $51,000,000.00 was well in excess of the $250,000.00 policy limits afforded under State Farm Policy A, the supplemental provision of the policy is controlling.

Next, we find the Parents dependence upon Ms. Shim's affidavit to be misplaced. Our review of the record reveals that the Declarations Page of State Farm Policy A plainly states that it is subject to an Amendatory Endorsement and that the Declarations Page forms a part of the policy. Ms. Shim's mistaken attestation cannot overcome the well-established principle that "[w]ords in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning." *Rolston*, 06-0978 at p. 5, 948

21

So.2d at 1117 (quoting *Peterson v. Schimek*, 98-1712, p. 5 (La. 3/2/99), 729 So.2d 1024, 1028-29). In contrast, we find that as the custodian of records, Mr. Kressner's certification that the attached Amendatory Endorsement was in effect at the time of loss carries more weight.[11] Further, the Parents have offered nothing to rebut the veracity of Mr. Kressner's certification.

Finally, we cannot agree with the Parents that the supplemental provision as written in the Amendatory Endorsement is ambiguous. We find that the final clause explicitly declares that once State Farm has deposited funds with the court for the amount it owes or potentially owes—in this case the $250,000.00 policy limit—it no longer has a duty to pay interest that subsequently accrues. These arguments are without merit.

*Argument No. 3*

In its final attempt to convince this Court that judicial interest should continue to accrue, the Parents direct us to the cases of *LaGraize v. Bickham*[12] and *Griffin v. Int'l Ins. Co.*[13] for the premise that State Farm did not follow the procedures for offering an unconditional tender for deposit as outlined in that jurisprudence. However, these cases are easily distinguishable. *LaGraize* concerns the interpretation of a codal provision as it pertained to a concursus proceeding, in which an insurer did not deposit the full amount of the policy limits into the registry of the court. Further, the *LaGraize* court was not faced with a judgment in excess of policy limits or the interpretation of contractual provisions.

---

[11] Ms. Shim's affidavit did not disclose either her job title or her professional responsibilities as a State Farm employee.

[12] 391 So.2d 1185, 1190-91 (La. App. 4 Cir. 1980).

[13] 98-431, pp. 3-4 (La. App. 3 Cir. 10/7/98), 727 So.2d 485, 489 (quoting *LaGraize*, 391 So.2d at 1191).

Our reading of *Griffin* finds that it stands for the proposition that an unconditional tender of funds forfeits a defendant's right to appeal. State Farm has not appealed the district court's judgment. We find these cases to be completely inapposite to the case *sub judice*. This argument is without merit.

## DECREE

For all of the foregoing reasons, we grant State Farm's motion to dismiss the appeal found in Case No. 2023-CA-0377; we deny State Farm's motion to dismiss the appeal found in Case No. 2023-CA-0528; we dismiss the appeal found in Case No. 2023-CA-0382 for lack of jurisdiction; and, we affirm the district court's February 27, 2023 judgment, to the extent that it finalized the issues previously adjudicated in its June 16, 2022 judgment on summary judgment and February 23, 2023 judgment on judicial interest.

**AFFIRMED**